[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10138
_____

D.C. Docket No. 8:11-cv-00293-TGW

J.B.D. CONSTRUCTION, INC.,
a Florida corporation,

Plaintiff-Counter Defendant -Appellant,

versus

MID-CONTINENT CASUALTY COMPANY,
an Ohio Corporation,

Defendant-Counter Claimant - Appellee.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 11, 2014)

Before MARTIN and HILL, Circuit Judges, and FULLER,[*] District Judge.

FULLER, District Judge:

_____
[*] Honorable Mark E. Fuller, United States District Judge for the Middle District of Alabama, sitting by designation.

This case involves an insurance coverage dispute between Mid-Continent Casualty Company ("MCC") and its insured, J.B.D. Construction, Inc. ("J.B.D."). On cross-motions for summary judgment, the district court found that MCC had neither a duty to defend nor a duty to indemnify J.B.D. in an underlying defective construction suit brought by Sun City Center Community Association, Inc. ("Sun City"). J.B.D. appeals the district court's ruling, arguing that MCC breached its contractual duty to defend by failing to appoint counsel and to pay investigative fees and that MCC is also obligated to indemnify it for the value of its settlement with Sun City. J.B.D. also requests that this Court remand the suit back to the district court to determine which consequential damages, if any, it is entitled to as a result of MCC's breach of its duty of defense. After careful review, and with the benefit of oral argument, we hold that MCC had a duty to defend J.B.D. against Sun City in the underlying litigation and that MCC breached that duty by failing to provide any semblance of a defense to J.B.D. We further hold that MCC did not have a duty to indemnify J.B.D. for the value of J.B.D.'s settlement with MCC. Accordingly, we **AFFIRM IN PART** and **REVERSE IN PART** and **REMAND** the case back to the district court to determine whether and to what extend MCC's breach entitles J.B.D. to consequential damages.

## I. FACTS AND PROCEDURAL BACKGROUND

**1. Underlying Lawsuit**

2

On July 23, 2004, J.B.D. entered into a written contract with Sun City for the construction of a fitness center.  J.B.D. and Sun City agreed that the fitness center would be constructed as an addition to an existing "Atrium" building.  The existing "Atrium" building would be physically joined with the fitness center at the buildings' roof lines.  Under a series of pre-construction Change Orders, Sun City agreed to purchase the pre-fabricated components of the fitness center, such as the building shell, slab concrete, building block, and rubber flooring.  J.B.D.'s corporate representative acknowledged that the project included assembling the fitness center and installing everything needed to make it a complete building, such as air conditioning, electrical, and plumbing.  The project did not include furnishing or supplying fitness equipment.  J.B.D., in its role as general contractor, retained a number of subcontractors and material suppliers to install Sun City's Change Order components.  J.B.D. also obtained a performance bond to cover their contractual obligations as well as a conditional payment bond.  Sun City purchased and accepted delivery of the components, and J.B.D. began construction. Construction was finished on January 18, 2007.

Beginning in the spring of 2007, Sun City and J.B.D. noticed damage caused by water leaks in the fitness center's roof, windows, and doors.  This damage included rusting steel, peeling paint, and blistering and discolored stucco.  In response, the parties took a series of steps to repair the damage and to eliminate the

3

leaks. Despite those efforts, Sun City refused to release the final payment because it believed the construction to be deficient. In October 2008, J.B.D. initiated a lawsuit against Sun City in the Thirteenth Judicial Circuit in Hillsborough County, Florida seeking full payment under the construction contract (hereinafter, "Sun City Litigation"). Sun City then filed a three count Counterclaim against J.B.D. for Breach of Contract (Count I), Breach of Section 553.84 *Fla. Stat.* (Count II); and Negligence (Count III) (hereinafter, "Sun City Counterclaim").

The Counterclaim alleged that J.B.D. breached its contractual obligations to provide labor, services, and materials in a workmanlike manner. The Counterclaim also alleged that J.B.D. breached its duty of care and that construction defects and deficiencies by J.B.D. violated minimal building codes and caused damage to the building. It further alleged that these defects and deficiencies caused "damages to the interior of the property, other building components and materials, and other, consequential and resulting damages" and "damage to other property."

MCC had sold two Commercial General Liability ("CGL") policies to J.B.D. covering the timeframe relevant to this suit, December 2006 through December 2008 ("MCC Policy").[1] On May 6, 2009, J.B.D. tendered the Sun City Counterclaim to MCC for a defense and indemnification. On May 21, 2009, MCC

---

[1] These policies are MID-CONTINENT CASUALTY COMPANY Policy Nos. GL669650 (12/15/06 through 12/15/07) and GL698630 (12/15/07 through 12/15/08).

sent a Reservation of Rights letter informing J.B.D. that it was investigating whether the MCC Policy covered any of Sun City's claims. The letter also identified and addressed various coverage exclusions MCC believed would affect its obligation to defend or indemnify. On May 26, 2009 and June 1, 2009, J.B.D.'s counsel followed up with MCC to determine whether MCC would be providing J.B.D. with a defense. MCC represented that J.B.D.'s request was "in process" but did not otherwise respond to J.B.D.

On July 15, 2009, after a series of investigations, J.B.D. agreed to settle Sun City's claims for $181,750.94, an amount less than Sun City's pre-mediation demand. J.B.D. funded the settlement from its own accounts on August 3, 2009. Shortly thereafter, J.B.D. notified MCC of its settlement and requested contribution and reimbursement under the MCC Policy for damages and legal costs incurred as a result of litigating the Sun City Counterclaim. Approximately a year later, on July 27, 2010, J.B.D. again contacted MCC, demanding reimbursement and threatening to pursue legal remedies if MCC did not respond. On August 17, 2010, J.B.D. again contacted MCC to demand reimbursement and to state its intention to sue if MCC did not reimburse it for settlement costs.

On October 12, 2010, MCC mailed J.B.D. a check for $5,717.77 to cover its defense obligation under the MCC Policy. MCC determined it owed J.B.D. $10,717.77 for attorney's fees and costs minus the $5,000 policy deductible,

5

covering the time J.B.D. tendered suit to MCC through the completion of the settlement.  In response, on October 28, 2010, J.B.D. sent MCC a letter insisting that MCC owed it a full reimbursement of the $181,750.94 settlement value and requesting confirmation that it could accept the $5,717.77 check as partial payment of that amount.  J.B.D. also indicated its intention to file a bad faith suit against MCC if MCC did not submit the remaining balance by November 9, 2010.  MCC responded on November 29, 2010, stating that "it placed no restrictions with regards to negotiation of the reimbursement check" but requested information about the basis for J.B.D.'s claim.  On December 30, 2010, J.B.D. again sent MCC a letter re-iterating its belief that MCC owed it a full reimbursement under the MCC Policy's contractual duty to defend and duty to indemnify.  J.B.D. also noted that it filed a Civil Remedy Notice of Insurer Violations with the Florida Division of Financial Services on September 10, 2010[2] and threatened to initiate suit if MCC did not submit the full payment by January 10, 2010.

**2.  MCC Policy Provisions**

As previously mentioned, MCC had issued two identical standard form Insurance Services Office ("ISO") CGL policies to J.B.D. covering the timeframe relevant to this suit.  The relevant policy language is as follows: "[MCC] will pay

---

[2]  The Civil Remedy Notice alleged violations of Fla. Statutes 629.954(1)(i)(3)(c), 626.9541(1)(i)(3)(e), 626.9541(1)(i)(3)(f), 626.9541(1)(i)(3)(g) and sought $181,750.94, $20,000 in attorney's fees and costs, fees and costs to J.B.D.'s bonding company, compensation for hours and repair work in excess of $15,000, and lost profits due to impairment of bonding capacity.

6

those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. . . . This insurance applies to . . . 'property damage' only if . . . [t]he 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'. . . ."

"'Property damage' means . . . '[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or . . . [l]oss of use of tangible property that is not physically injured.'"

"An 'occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The policy also excludes coverage for the following:

**j.  Damage to Property**
"Property damage" to:
. . . .
(4) Personal property in the care, custody or control of the insured;
(5) that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored or replaced because "your work" was incorrectly performed on it.
. . . .
Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

. . . .
**l.  Damage to Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".[3]

---

[3]  This exclusion is known as the "your work" exclusion. S*ee, e.g.*, *Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294 (11th Cir. 2012) (citing *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 879 (Fla. 2007).  The MCC Policy originally contained what is commonly known as a

The MCC Policy defines "your work" to mean "work or operations performed by you or on your behalf; and . . . materials, parts, or equipment furnished in connection with such work or operations."

The MCC Policy also included Products-Completed Operations Hazard ("PCOH") coverage. Under the policy:

> [PCOH] includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
> (1) Products that are still in your physical possession; or
> (2) Work that has not yet been completed or abandoned. However, "your work" will not be deemed completed at the earliest of the following times:
> > (a) When all of the work called for in your contract has been completed.
> > (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> > (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

## 3. Insurance Coverage Dispute

On January 11, 2011, J.B.D. sued MCC in Hillsborough County Circuit Court. MCC subsequently removed the action to the Middle District of Florida on February 11, 2011 on the basis of diversity jurisdiction. In its Second Amended

---

"subcontractor exception," *see id.*, stating that "[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." However, it was eliminated by Endorsement CG 22 94 10 01.

Complaint, J.B.D. brought damage claims against MCC based on MCC's alleged breach of its duty of defense, breach of its duty to indemnify, and for a declaration of its rights under the MCC Policy. MCC answered, asserting various affirmative defenses and a counterclaim for a declaration of no coverage. On April 13, 2012, both parties filed cross-motions for summary judgment on all claims. The motions disputed whether MCC owed J.B.D. a duty of defense or indemnification, whether MCC breached either duty, and, if so, whether and to what extent J.B.D. was entitled to consequential damages flowing from MCC's breach.

On October 25, 2012, the district court entered an order denying J.B.D.'s motion for summary judgment and granting in part and denying in part MCC's motion for summary judgment. The court reasoned that to the extent any of the Sun City claims were for the costs to repair the defectively installed roof, doors and windows, these costs were not "property damage" and therefore not covered by the MCC Policy under Florida law. The district court then held that the scope of J.B.D.'s "work" included construction of the entire fitness center. Therefore, to the extent that any of the Sun City claims were for the costs to repair damage to the other components of the fitness center caused by the defectively installed roof, doors and windows, those costs fell under the "your work" exclusion and were not covered by the MCC Policy. Accordingly, the district court held that J.B.D.'s

9

coverage under the MCC Policy was limited only to claims for damage to non-fitness center property caused by J.B.D. or its subcontractor's construction defects.

Applying these coverage limits to the suit before it, the court held that MCC did not have a duty to defend J.B.D. in the underlying Sun City Litigation because "there [was] nothing on the face of the Counterclaim which indicate[d] damage to property other than the Fitness Center itself." [4]   The court then held that MCC did not have a duty to indemnify J.B.D. as a matter of law because J.B.D. had not demonstrated the existence of actual damage to property other than the fitness center itself, and, therefore, J.B.D. had not established it paid Sun City to settle claims for any covered "property damage."  Judgment was entered in favor of MCC on the duty to defend, duty to indemnify, and declaratory judgment claims on December 11, 2012.  J.B.D. filed its Notice of Appeal on January 8, 2013.

## II. DISCUSSION

### 1.  MCC Policy Coverage

The primary issues on appeal are whether MCC had a duty to defend and/or a duty to indemnify J.B.D. under the MCC Policy in the underlying Sun City

---

[4]   It was undisputed that the defective installation qualified as an "occurrence" under the policy and that this "occurrence" took place during a time period covered by the MCC Policy.  The district court also explicitly rejected MCC's argument that their payment, and J.B.D.'s acceptance, of the $5,717.77 check constituted an "accord and satisfaction" thereby eliminating any liability with regard to the duty to defend claim.  However, this issue was mooted by the district court's holding that MCC did not owe J.B.D. a duty of defense in the first place.

10

Litigation.  To resolve these disputes, we must first determine the scope of coverage under the MCC Policy.

### a. "Property damage" caused by an "occurrence"

The MCC Policy provides coverage for "property damage" caused by an "occurrence."  The parties do not dispute that J.B.D.'s defective construction qualifies as an occurrence.  "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property."  The Florida Supreme Court has been clear that the cost of removing or repairing defective work does not qualify as a claim for "property damage."  See U.S. Fire Ins. Co. v. J.S.U.B., Inc, 979 So. 2d 871 (Fla. 2007); Auto Owners Ins. Co. v. Pozzi Window Co., 984 So. 2d 1241 (Fla. 2008).  However, a claim for the costs of repairing damage to other property caused by defective work does qualify as a claim for "property damage."  See J.S.U.B., 979 So. 2d at 889 ("[T]here is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by defective work, which is a claim for 'property damage.'").

A recent decision by this Court, Amerisure Mutual Insurance Co. v. Auchter Co., 673 F.3d 1284 (11th Cir. 2012), further limited the definition of covered "property damage" in a standard CGL policy such as the one issued by MCC in this case.  In Auchter, Amelia Island Company ("Amelia") entered into a contract

11

with Auchter Company ("Auchter"), a general contractor, for the construction of an inn and conference center on Amelia's property. Id. at 1295. Auchter entered into a subcontract with Register Contracting Company ("Register") to construct the inn's roof. Id. Amelia purchased the individual tiles and then Register installed them. After the roof was completed, several tiles became dislodged and caused damage to other roof tiles. Id. at 1296. Amelia sued Auchter for the cost of repairing the defectively installed roof. Id. Amelia did not allege that the dislodged tiles had damaged any parts of the inn other than the roof itself. Id. Auchter subsequently tendered the claim to its insurer, Amerisure Mutual Insurance Company ("Amerisure"), and Amerisure brought a declaratory judgment to determine coverage under the CGL Policy it had issued to Auchter. Id. at 1297.

This Court held that Amelia's claim for the costs to repair the defective roof were not claims for "property damage" because the defective installation of the inn's roof did not cause "physical injury to tangible property." Id. at 1309. In reaching its conclusion, the Court emphasized that Amelia's claim was to replace the defectively installed roof as a whole, not simply to replace or repair the various tiles or other project components that had been damaged by the dislodged tiles. Id. at 1307. The Court placed particular emphasis on the fact that, because of the interlocking nature of roof tiles, Auchter's defective workmanship would require a refabrication of the entire roof and could not be repaired piecemeal. Id. at 1308.

12

Thus, the relevant component for examining the scope of Auchter's subcontractor's defective work was not the individually installed roofing tiles, which the Court considered to be the raw materials from which the roof was made, but instead was the entire roof itself. Id. Accordingly, the Court held that Amelia's claim was not for the costs to repair damage to other property, such as the other tiles, caused by Auchter's subcontractor's defective work, which would have been covered "property damage," but was instead simply a claim for the cost of replacing the subcontractor's entire defective roof, and therefore was not covered "property damage." Id. at 1307 (citing J.S.U.B., 979 So. 2d at 890).

MCC argues that the holding in Auchter dictates that any claims for the costs to repair damage to the fitness center or its components are not claims for "property damage." Because J.B.D. agreed to construct the entire fitness center, and the project components are merely the raw materials used in construction, the cost to repair any damage to the fitness center caused by the subcontractor's defective installation of the fitness center's roof, doors, and windows are costs to repair J.B.D.'s defective construction. Therefore, MCC argues that the policy definition of "property damage" only includes claims for costs to repair damage to property other than the fitness center itself and would not cover claims for costs to repair damages to other components of the fitness center caused by J.B.D.'s or its subcontractor's defective work as a matter of law. J.B.D. asserts that the reasoning

13

in Auchter does not apply in this case.  Instead, J.B.D. agrees that Florida law excludes coverage for the cost to repair or replace the defective construction itself, but contends that damage to other components of the fitness center caused by the defective construction qualifies as covered "property damage."

Because, as explained below, determining the scope of the policy definition of "property damage" would not change J.B.D.'s coverage under the MCC Policy, we decline to decide whether to extend the holding in Auchter to the facts of this case.  Instead, we hold that the costs to repair defective construction are not covered "property damage," see J.S.U.B., Inc, 979 So. 2d at 87; Pozzi Window Co., 984 So. 2d at 1241, and turns to the policy's "your work" exclusion to hold that any claims against J.B.D. for the cost to repair damage to the fitness center arising from J.B.D.'s or its subcontractor's defective work are not covered by the MCC Policy.

### b. "Your work" Exclusion

Exclusion (l), otherwise known as the "your work" exclusion, states that insurance does not apply to "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."  The MCC Policy defines "your work" to mean "work or operations performed by you or on your behalf; and . . . materials, parts, or equipment furnished in connection with such work or operations."  The Products-Completed Operations Hazard is

14

defined to include "all 'bodily injury' and 'property damage occurring away from premises you own or rent and arising out of 'your product' or 'your work.'"  The Products-Completed Operations Hazard includes a number of exceptions, none of which are relevant to this case.  The parties do not dispute that the "your work" exclusion applies nor do they dispute that it is enforceable.

Originally, the MCC Policy also included a subcontractor exception to the "your work" exclusion, which stated that the "your work" exclusion did "not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."  As originally written, therefore, the MCC Policy covered claims for damage to J.B.D.'s "work" arising from the faulty construction of J.B.D.'s subcontractors.  However, this exception was eliminated by Endorsement CG 22 94 101 01.  By eliminating the subcontractor's exception, the MCC Policy no longer covered any claims for damage to J.B.D.'s "work" arising from work performed by J.B.D.'s subcontractors.  Cf. J.S.U.B., 979 So. 2d at 887 (holding that an identical "your work" exclusion in a post-1986 CGL policy excluded coverage for damage caused by the contractor's defective work and that the contractor would not have been covered by the policy absent the subcontractor exception).

Because J.B.D. undertook the construction of the entire fitness center, we agree with the district court's finding that J.B.D.'s "work," for the purpose of

15

applying the "your work" exclusion, included "construction of the health center building with related and appurtenant improvements to an existing structure." Therefore, the "your work" exclusion, absent the subcontractor's exception, bars coverage for damages to the completed fitness center or its components (J.B.D.'s "work") arising from J.B.D. or its subcontractor's defective construction. See e.g., Auchter, 673 F.3d at 1310 (explaining that the "your work" exclusion, absent a subcontractor's exception, would eliminate a contractor's coverage for damage to a completed project where a subcontractor's faulty workmanship on one part of the project caused damage to another part of the project).

Reading the "your work" exclusion in conjunction with the settled policy definition of "property damage," we find that the MCC Policy does not cover claims against J.B.D. for the cost to repair or replace any damage to the completed fitness center or its components, either based on the repair or removal of the defective construction itself, or based on the repair of any damage arising out J.B.D.'s or its subcontractor's defective construction.   Having determined the scope of J.B.D.'s coverage under the MCC Policy, we now turn to whether MCC had a duty to defend J.B.D. and, if so, whether MCC breached that duty.

## 2.  Duty to Defend

We will first address whether the district court erred in holding that MCC had no duty to defend J.B.D. against Sun City in the underlying litigation.  Because

16

we find that MCC did have a duty to defend J.B.D., we will then turn to whether MCC breached its duty.

### a. Duty to Defend

The district court accurately recited Florida substantive law governing an insurer's duty to defend its insured against legal action in an underlying lawsuit. In Florida, whether an insurer has a duty to defend depends solely on the allegations in the complaint and the terms of the insurance policy. See, e.g., Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So. 2d 533, 536 (Fla. 1977). An insurer has a duty to defend the entire suit when the complaint alleges "facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 442–43 (Fla. 2005). "The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." See Jones, 908 So. 2d at 443 (citations omitted). Any doubts regarding the duty to defend are resolved in favor of the insured. Id.

Even if the facts in the complaint potentially bring the suit within policy coverage, an insurer may avoid the duty to defend if an exclusion applies to the face of the complaint. See Keen v. Fla. Sheriffs' Self-Insurance, 692 So. 2d 1021, 1024 (Fla. 4th DCA 2007). Any doubts regarding the application of an exclusion

17

are resolved in favor of the insured.  See Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998).

The parties agreed at oral argument that MCC had a duty to defend J.B.D. against claims by Sun City in the underlying litigation.  We also agree.  For the reasons given in Part 1a-b *supra*, the MCC Policy, at the very least, fairly and potentially covered any claims for damage to property other than the completed fitness center caused by J.B.D.'s or its subcontractor's defective work.  Count II of the Sun City Counterclaim, which is the statutory civil action for violations of the Florida Building Code, unequivocally states a claim for "damage to other property" caused by J.B.D.'s alleged building code violations.  This reference to "other property" potentially included damage to non-fitness center property such as the adjacent Atrium building to which the fitness center was being connected or damage to other equipment, such as exercise machines, which may have been moved into the building post-construction.  Count III of the Counterclaim, the negligence claim, also references "damages to the interior of the property, other building components and materials," and thus potentially includes allegations of damage to the same non-project property.  Accordingly, these allegations of damage to property other than the fitness center caused by J.B.D.'s or its subcontractor's defective work potentially came within MCC Policy coverage and, therefore, triggered MCC's duty to defend J.B.D. in the entire suit.  See Colony

Ins. Co. v. Barnes, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005) ("If a complaint alleges any claim that, if proven, might come within the insurer's indemnity obligation, the insurer must defend the entire action."). Thus, we **reverse** the district court's decision to deny J.B.D.'s motion for summary judgment on this issue and **grant** summary judgment in favor of J.B.D.

### b. Breach of the Duty to Defend

Having determined that MCC had a duty to defend J.B.D against Sun City, we now turn to the question of whether MCC breached this duty.

It is undisputed that J.B.D. tendered the Sun City Counterclaim to MCC for defense and indemnification on May 6, 2009. On May 21, 2009 MCC sent J.B.D. a Reservation of Rights letter notifying J.B.D. that it was investigating the claim. At no point after sending this letter did MCC retain counsel or otherwise assist in defending for J.B.D.

On July 15, 2009, acting on advice from its own retained counsel, J.B.D. agreed to settle all claims in the Sun City Counterclaim for $181,750.94. J.B.D. subsequently notified MCC of the settlement and again requested indemnification. Over a year later, MCC mailed J.B.D. a check for $5,717.77 to reimburse J.B.D.'s counsel for his services from the time of tender until the completion of the settlement. This check represented the value of J.B.D.'s attorney's fees and expenses accrued from the date of tender up until the date of settlement less the

19

$5,000 contractual deductible.  J.B.D. responded by sending a letter to MCC demanding full reimbursement of the settlement value and notifying MCC of its intention to treat the check as a partial payment of that amount.

The record is clear that MCC elected not to defend J.B.D. against Sun City in the underlying litigation from the time J.B.D. tendered the suit through the settlement date.  This failure to appoint counsel is a clear breach of MCC's duty to defend.  MCC argues, however, that its payment of the $5,717.77 check acted as an "accord and satisfaction," therefore curing the breach.  Despite finding that MCC did not owe J.B.D. a duty to defend, the district court nonetheless ruled, as a matter of law, that this payment was not an "accord and satisfaction."  We agree.

An "accord and satisfaction results as a matter of law when an offerree accepts payment which is tendered only on the express condition that its receipt is to be deemed a complete satisfaction of a disputed claim."  See Hannah v. James A. Ryder Corp., 380 So. 2d 507, 609–10 (Fla. 3rd DCA 1980) (citations omitted).  J.B.D. did not accept payment on the express condition that its receipt would be a complete satisfaction of the lingering duty of defense dispute.  Correspondences between the parties make clear that J.B.D. intended to treat the check as partial payment of the $181,750.94 settlement value J.B.D. believed MCC owed it.  Accordingly, we **affirm** the district court's denial of MCC's motion for summary judgment on the accord and satisfaction issue and hold that MCC breached its

20

contractual duty to defend under the MCC Policy as a matter of law by failing to provide J.B.D with counsel or otherwise defend J.B.D. against the Sun City Counterclaim.   We **remand** the case to the district court for the sole purpose of determining whether, and to what extent, J.B.D. is entitled to damages, including consequential damages, as a result of MCC's breach of its duty to defend J.B.D. from the time of tender through date of settlement.[5]

### 3.  Duty to Indemnify

We now turn to whether MCC had an indemnity obligation under the MCC Policy.   An insurer's duty to indemnify is narrower than the duty to defend and must be determined by analyzing the policy coverage in light of the actual facts in the underlying case.  State Farm Fire and Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1077 (Fla. 1988).  The duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims. See Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). If the insured cannot demonstrate that it suffered a loss under the policy, the insurer has no duty to indemnify.  Id.

As discussed in Part 1a-b *supra*, the MCC Policy does not provide coverage for the costs to repair or replace J.B.D.'s or its subcontractor's defective construction under the policy definition of "property damage" or for the costs to

---

[5]   Included in this inquiry is determination of whether the $5,000 policy deductible applies to J.B.D.'s potential recovery, an issue the parties dispute before this Court.

21

repair damage to the completed[6] fitness center or its components arising from J.B.D.'s or its subcontractor's defective construction under the "your work" exclusion.  Accordingly, the MCC Policy only covers claims for damage to property other than the completed fitness center caused by the defective installation of the doors, windows, and roof.  The MCC Policy provides indemnification for "the sums that the insured becomes legally obligated to pay as damages because of . . . property damage to which this insurance applies."  Thus, MCC is only obligated to indemnify J.B.D. for any sum J.B.D. paid Sun City to settle claims for the costs of repairing damage to property other than the completed fitness center.

Applying the policy coverage to the "actual facts in the underlying case," we cannot find evidence of damage to property other than the completed fitness center or its components.  The Sun City Counterclaim included a claim for breach of contract, a statutory claim for failing to comply with Florida building codes, and a negligence claim.  Among other damages, the three claims sought costs to repair any defective construction, costs to repair damage to the fitness center caused by the alleged construction defects, and damage to other property.  J.B.D. and Sun City agreed to settle all claims in the underlying Counterclaim on July 15, 2009, for $181,750.94.  Based on Sun City's pre-mediation damages/costs breakdown,

---

[6]  It is undisputed that the fitness center was completed in January, 2007 and that therefore coverage for the alleged property damage would fall within the "products completed operations hazard."

22

the settlement value was for estimated remediation costs, actual repair costs, engineering invoices, and legal fees and costs. Nothing on the record suggests that the settlement, including the estimated remediation costs, were to repair physical damage to property other than the fitness center itself, and, therefore the district court did not err in holding that MCC did not owe J.B.D. a duty to indemnify it for the value of the Sun City settlement.[7]

J.B.D. argues that the settlement value reflected compensation for costs to repair property other than the completed fitness center. J.B.D. directs the Court to engineering reports documenting water intrusion points at certain transition areas between the completed fitness center and the pre-existing Atrium building, and argues that the settlement agreement was based partially on estimates of the costs to repair this damage. Because this damage was not to the completed fitness center, J.B.D. contends it is covered "property damage" not excluded by the "your work" exclusion and, at the least, creates a fact issue as to whether the settlement triggered MCC's duty to indemnify. We cannot agree. While J.B.D. is correct that damage to property other than the completed fitness center would be covered by the MCC Policy, we find no evidence of such damage. The engineering reports

---

[7] Under Florida law, J.B.D. has the burden of allocating the settlement amount between covered and uncovered claims and the inability to do so precludes recovery. See, e.g., Am. Cas. Co. of Reading Pa. v. Health Care Indemn., Inc., 613 F. Supp. 2d 1310, 1320 (M.D. Fla. 2009). Thus, even if J.B.D. could establish that some portion of the settlement value was for claims to repair damage covered under the MCC Policy, J.B.D.'s claims would mostly likely fail because it could not allocate what portion was for covered property damage and what portion was not.

23

J.B.D. directs the Court to vaguely speak of water intrusion points, not water damage. Absent evidence of actual damage to the Atrium building, the engineering reports themselves are insufficient to create a genuine dispute that J.B.D.'s work caused damage to some property other than the fitness center.[8]

Finally, although J.B.D. concedes that the "your work" exclusion is enforceable, it contends that MCC has not carried its burden of establishing that the physical evidence of damage to the completed fitness center was caused by J.B.D. or its subcontractor's "work" rather than from manufacturing defects or design flaws. See Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co., 227 F. Supp. 2d 1248, 1258 (M.D. Fla. 2002) (noting that the insurer bears the burden of establishing that an exclusion applies if defending on the ground of non-coverage). J.B.D.'s argument misreads the plain language of the "your work" exclusion. The "your work" exclusion does not exclude coverage for damage "caused" by J.B.D.

---

[8] J.B.D. also argues that the remediation estimate is based on the approximate cost of arresting ongoing water intrusion which, if left uncorrected, would eventually result in damage to covered, non-project property thus triggering MCC's indemnity obligation. J.B.D. contends these mitigation costs should qualify for coverage under the MCC Policy. See Leebov v. United States Fidelity and Guar. Co., 401 Pa. 477 (Pa. 1960). While the costs to repair J.B.D.'s defective construction certainly did mitigate potential future damage, it can hardly be said they should qualify for coverage as "mitigation costs." See Rolyn Companies, Inc. v. R & J Sales of Texas, Inc., 671 F. Supp. 2d 1314, 137 (S.D. Fla. 2009) (finding that repairs to conform buildings to their original specifications, thus making the buildings "like new," could not be covered "mitigation costs"). To accept J.B.D.'s argument would defeat the distinction between covered and uncovered "property damage" that is well-settled under Florida law. Because the cost to repair defective work, which is expressly not covered, will almost always also mitigate potential damage to other property, which is covered, an uncovered claim for costs to repair defective work would instantly be transformed into a covered claim for "mitigation costs." Absent some unique circumstances, none of which we can find here, we refuse to adopt this rule.

24

or its subcontractor's work but instead excludes coverage for damage that "arises" from J.B.D.'s or its subcontractor's work. The term "arise" is broader than the word "cause," see Taurus Holdings, Inc. v. USF & G Co., 913 So. 2d 528, 539–40 (Fla. 2005), and it is undisputed that the damage "arose" from J.B.D.'s or its subcontractor's work. Therefore, MCC has carried its burden of establishing, as a matter of law, that the "your work" exclusion applies and therefore that the settlement payment did not trigger MCC's duty to indemnify.

Accordingly, analyzing the policy in light of the facts in the underlying case, we find no evidence of damage to property other than the completed fitness center and therefore uphold the district court's determination that MCC does not have a duty to indemnify J.B.D as a matter of law. Because the settlement value was not covered by the MCC Policy, MCC also did not have a duty to indemnify J.B.D. for any legal fees and costs included in the settlement. See Assurance Co. of Am. v. Lucas Waterproofing, Inc., 581 F. Supp. 2d 1201 (S.D. Fla. 2008).

### III. CONCLUSION

For the reasons discussed above, we **REVERSE** the district court's grant of summary judgment to MCC on the issue of MCC's duty to defend and **REMAND** for a determination of consequential damages consistent with this opinion. We otherwise **AFFIRM** the district court's holdings.