M. CASEY RODGERS, CHIEF UNITED STATES DISTRICT JUDGE
*1179 This matter is before the Court on two motions: (1) Morette Company, individually and for the benefit of BITCO National Insurance Company's Motion for Summary Judgment on Liability, ECF No. 31; and (2) Southern-Owners Insurance Company's Motion for Summary Judgment, ECF No. 46. The Court's rulings are set forth below.
I. Background
This consolidated action involves an insurance coverage dispute over the obligation, if any, of Southern-Owners Insurance Company ("Southern-Owners") to defend and indemnify various parties against state court claims for property damage due to allegedly defective work performed by two of its insureds, Etheridge Construction, Inc. ("Etheridge Construction") and Wallace Sprinkler & Supply, Inc. ("Wallace Sprinkler"), while serving as subcontractors for the construction of the Margaritaville Beach Hotel ("Margaritaville") in Pensacola Beach, Florida. The state court lawsuit and the federal court actions arise from the following undisputed facts.
In August 2008, Little Sabine, Inc. ("Sabine"), the developer and owner of Margaritaville, hired Morette Company, Inc. ("Morette") as general contractor for the Margaritaville project. Morette subcontracted various portions of the construction work to Etheridge Construction and Wallace Sprinkler. The terms of their respective subcontracts required each subcontractor to defend and indemnify Morette for all damages claims "occasioned by" the subcontractor's work and to reimburse Morette for all expenses incurred, including reasonable attorney's fees, as a result of such claims.[1] See ECF No. 1-5 at 12. The subcontracts also required each subcontractor to maintain liability insurance naming Morette as an additional insured. See id.
As per their subcontracts, both Etheridge Construction and Wallace Sprinkler obtained commercial general liability policies ("CGL policies") with blanket additional insured endorsements ("Endorsements") from Southern-Owners.[2] The Endorsements provide that "[a] person or organization is an Additional Insured, only with respect to liability arising out of 'your work' for that Additional Insured by or for you ... [i]f required in a written contract or agreement." ECF No. 1-4 at 189. The CGL policies define "your work" as "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished *1180 in connection with such work or operations." ECF No. 1-5 at 62. The Endorsements also specify that the "insurance is primary for the Additional Insured, but only with respect to liability arising out of 'your work' for that Additional Insured by or for you. Other insurance available to the Additional Insured will apply as excess insurance and not contribute as primary insurance to the insurance provided by" Southern-Owners. See ECF 1-4 at 189. The parties agree that Morette is an additional insured under the CGL policies pursuant to the subcontracts and the Endorsements.
After the construction of Margaritaville was complete, Sabine retained an architect to inspect the finished project. The architect issued a report identifying a number of alleged defects purportedly resulting from improper design and construction of Margaritaville. Sabine then served a notice of claim on Morette, pursuant to Florida Statutes 558.004.[3] The notice of claim advised Morette of the discovery of the purportedly defective work set forth in the architect's report and provided Morette an opportunity to inspect and cure the defects. When Sabine and Morette were unable to informally resolve the problems identified in the notice, Sabine filed a lawsuit against Morette in the Circuit Court for Escambia County, Florida (the "state court lawsuit"), alleging breach of contract, breach of implied warranty, violation of Florida building code, and negligence for numerous unresolved construction and design defects that caused damage to the hotel property. See ECF No. 1-1 at 2, 4.
Morette determined that the allegedly defective work was performed by its subcontractors, Etheridge Construction and Wallace Sprinkler.[4] Thereafter, Morette sent multiple letters to Etheridge Construction, Wallace Sprinkler, and their insurer, Southern-Owners, invoking its rights as an additional insured under the CGL policies and demanding defense and indemnification for the claims in the state court lawsuit. Southern-Owners declined to provide coverage. Morette, represented by attorneys provided by its own liability insurer, BITCO National Insurance Company ("BITCO"), defended against the state court lawsuit and also asserted third-party claims against Etheridge Construction, Wallace Sprinkler, and other subcontractors, seeking to recover from them any amounts for which Morette might be held liable. The state court lawsuit subsequently settled, but Morette reserved its right to seek defense and indemnity from Southern-Owners.
Since that time, two actions have been filed and consolidated for adjudication by this Court. First, on March 3, 2015, Southern-Owners filed an action for declaratory judgment for the purpose of determining its rights and obligations under the CGL policy issued by Southern-Owners to Wallace *1181 Sprinkler.[5] See Case No. 3:15cv077/MCR/EMT, ECF No. 1. In the operative complaint, Southern-Owners seeks a declaration that it had no duty to defend or indemnify Sabine, Morette, or various other entities against the claims alleged in the state court lawsuit.[6] See Case No. 3:16cv110, ECF No. 19. Second, on March 14, 2016, Morette filed a separate action against Southern-Owners, seeking a declaration that both Etheridge Construction and Wallace Sprinkler's CGL policies obligated Southern-Owners to defend and indemnify Morette in the state court lawsuit and alleging breach of contract based on Southern-Owners refusal to provide the requisite defense. See id. , ECF No. 1. The parties have filed and briefed cross-motions for summary judgment on the same legal issue-whether Southern-Owners owes a duty to defend and indemnify Morette for the claims alleged in the state court lawsuit.
II. Legal Standard
A district court applies the same legal standards when ruling on cross-motions for summary judgment as it does when only one party files a motion. Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc. , 80 F.Supp.3d 1311, 1316 (S.D. Fla. 2015). "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts." Id. (citing United States v. Oakley , 744 F.2d 1553, 1555-56 (11th Cir. 1984) ).
Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 ; see also Celotex Corp. v. Catrett , 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. Hickson Corp. v. N. Crossarm Co. , 357 F.3d 1256, 1259-60 (11th Cir. 2004). A dispute of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. Celotex , 477 U.S. at 323, 106 S.Ct. 2548. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. Liberty Lobby , 477 U.S. at 255, 106 S.Ct. 2505 ; Allen v. Tyson Foods , 121 F.3d 642, 646 (11th Cir. 1997). "Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction *1182 and effect of which is a matter of law." Northland Cas. Co. v. HBE Corp. , 160 F.Supp.2d 1348, 1358 (M.D. Fla. 2001).
III. Discussion[7]
Morette argues it is entitled to summary judgment because the allegations in the state court lawsuit triggered Southern-Owners' duty to defend and indemnify, which Southern-Owners has refused to do. Southern-Owners opposes Morette's motion and moves for summary judgment in its favor regarding the duty to defend and indemnify. More specifically, Southern-Owners asserts it had no duty to defend or indemnify Morette because the state court lawsuit did not allege "property damage" as defined in the CGL policies, and alternatively, the CGL policies' various exclusions operate to preclude coverage.
A. Duty to Defend
The question of whether Southern-Owners owes a defense to Morette or the other remaining defendants turns on whether the allegations in the state court lawsuit bring that action within the scope of the CGL policies' coverage. See Jones v. Florida Ins. Guar. Ass'n, Inc. , 908 So.2d 435, 443 (Fla. 2005) ; Lime Tree Village Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co. , 980 F.2d 1402, 1405 (11th Cir. 1993). Under Florida law, "the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc. , 771 So.2d 579, 580-81 (Fla. 4th DCA 2000) ; see also Jones , 908 So.2d at 442-43. If any factual allegations "fairly and potentially" fall within the policy's coverage, the insurer has a duty to defend the action. See Jones , 908 So.2d at 443. Thus, even where the underlying action "alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." Trizec Props., Inc. v. Biltmore Constr. Co., Inc. , 767 F.2d 810, 811-12 (11th Cir. 1985) ; see also Pentecost v. Lawyers Title Ins. Corp. , 704 So.2d 1103 (Fla. 1st DCA 1997). However, no obligation to defend arises where the facts alleged do not state a claim for which there would be coverage or where a policy exclusion applies. WPC Indus. Contractors, Ltd. v. Amerisure Mut. Ins. Co. , 720 F.Supp.2d 1377, 1380 (S.D. Fla. 2009). Any doubts regarding whether the duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured. Jones , 908 So.2d at 443 ; Grissom v. Commercial Union Ins. Co. , 610 So.2d 1299, 1307 (Fla. 1st DCA 1992).
As an initial matter, the Court must resolve the parties' dispute over which documents may be used to determine whether Southern-Owners owed a duty to defend. Southern-Owners argues that only the terms of the CGL policies and the allegations contained within the four corners of the state court complaint may be considered. In response, Morette argues that the Court also should review the "Chapter 558 Notice of Defects" that it contends was incorporated by reference in the state court complaint, see ECF No. 42-1 ("Notice 1"), as well as a "revised Chapter 558 Notice of Defects" that was sent to Etheridge Construction and Southern-Owners *1183 by Morette on November 11, 2013, see ECF No. 1-6 at 81-82. ("Notice 2").[8] As discussed above, whether an insurer has a duty to defend a lawsuit against its insured generally depends on the allegations in the operative complaint and the terms of the insurance policy. See Appel v. Lexington Ins. Co. , 29 So.3d 377, 379 (Fla. 5th DCA 2010). An extrinsic document not physically attached to the complaint may be incorporated into it by reference if the document's contents are alleged in the complaint (i.e. , central to the plaintiff's claim) and the document's authenticity is undisputed. See Day v. Taylor , 400 F.3d 1272, 1276 (11th Cir. 2005) ; One Call Property Services Inc. v. Security First Ins. Co. , 165 So.3d 749, 752 (Fla. 4th DCA 2015) (holding that trial court properly determined that an insurance policy was impliedly incorporated where "[t]he complaint refers to the policy" and the suit was premised on an assignment of the policy); Veal v. Voyager Prop. & Cas. Ins. Co. , 51 So.3d 1246, 1249-50 (Fla. 2d DCA 2011) ("[I]n this case, the complaint refers to the settlement agreement, and in fact, [plaintiff's] standing to bring suit is premised on the terms of that agreement. Accordingly, since the complaint impliedly incorporates the terms of the agreement by reference, the trial court was entitled to review the terms of that agreement to determine the nature of the claim being alleged.").
In this case, the state court complaint expressly alleges that Notice 1 was provided to Morette, that the defects identified in Notice 1 were not resolved, and that the plaintiff suffered property damage "[a]s a result of the unresolved defects." See ECF No. 1-1 at 2. The state court lawsuit thus is premised in large part on the "unresolved defects" detailed in Notice 1, which makes the contents of Notice 1 central to the state court plaintiff's claims. Southern-Owners has not disputed the centrality or authenticity of Notice 1. Therefore, the Court finds that Notice 1 was incorporated by reference into the state court complaint and that its contents may be considered in determining whether Southern-Owners' duty to defend was triggered by the state court lawsuit. However, the Court finds that Notice 2 was not impliedly incorporated by reference in the state court complaint. The allegations of the state court complaint do not mention Notice 2 or its contents, either explicitly or implicitly. See ECF No. 1-1. Obviously, this is because the alleged construction defects described in Notice 2 did not materialize until over a year after the state court lawsuit was filed. See ECF No. 1-6 at 1. Facts developed by an insured after the underlying lawsuit commenced may not be considered in determining the insurer's duty to defend. See Gold Coast Marine , 771 So.2d at 580-81 (stating that duty to defend is determined by the allegations against the insured, not by the actual facts or any party's version of the facts). Therefore, the Court finds that the facts described in Notice 2 may not be used as a basis for the duty to defend in this case. Only the factual allegations in the state court complaint, Notice 1, which was incorporated by reference in the state court complaint, and the terms of the CGL policies may be considered in analyzing Southern-Owners' duty to defend.
The Court next addresses whether the state court lawsuit involved "property damages" as defined in the CGL policies.
*1184 In relevant part, the CGL policies provide that Southern-Owners will "defend the insured against any 'suit' seeking ... damages [because of 'bodily injury' or 'property damage' to which this insurance applies]." ECF No. 1-5 at 42. "Property damage" is defined in the CGL policies as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." Id. at 61. The policy specifically excludes from coverage damage to "[y]our work," see id. at 47, which is defined as "[w]ork or operations performed by you on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations,"Id. at 62, 62. Also specifically excluded from coverage is property damage to "your product," see id. at 47, which includes "[a]ny goods or products ... manufactured, sold, handled, distributed or disposed of by you," Id. at 62.
Reading these three standard CGL provisions together, Florida courts have consistently held that a claim for the cost of repairing or replacing the insured's defective construction work does not qualify as a claim for "property damage," whereas a claim for the costs of repairing independent damage caused by the insured's defective work is a claim for "property damage." See Auto-Owners Ins. Co. v. Pozzi Windows Co. , 984 So.2d 1241, 1248 (Fla. 2008) ("[I]f there is no damage beyond the faulty workmanship or defective work, then there may be no resulting property damage."); LaMarche v. Shelby Mut. Ins. Co. , 390 So.2d 325, 326 (Fla. 1980) ("Rather than coverage and payment for building flaws or deficiencies, [a CGL] policy instead covers damage caused by those flaws."); W. Orange Lumber Co. v. Ind. Lumbermens Mut. Ins. Co. , 898 So.2d 1147, 1148 (Fla. 5th DCA 2005) (finding no property damage where the only damage alleged was the cost of removing and replacing the wrong grade cedar siding, which was installed by the insured). Importantly, the term "property damage" includes damage wreaked on the work product of a different subcontractor on the same construction project. See Carithers v. Mid-Continent Cas. Co. , 782 F.3d 1240, 1249-50 (11th Cir. 2015) (holding that where bricks were installed by one sub-contractor, and a different sub-contractor[, the insured,] applied an exterior brick coating, then the damage to the bricks caused by the negligent application of the brick coating was not part of the [insured] subcontractor's defective work, and constituted "property damage").
Applying these principles to this case, the Court finds that at least some of the allegations in the state court lawsuit fairly and potentially fall within the scope of the subject CGL policies. In particular, the state court lawsuit alleges, inter alia , that the "improper design and construction of floor pavers does not allow for proper drainage," see ECF No. 1-1 at 65, which resulted in clogging of the concrete floor drains, see ECF No. 42-1 at 4, and caused standing/ponded water throughout the concrete floor cavity underneath the pavers around the Margaritaville structure, see ECF No. 42-1 at 4-5. There are also allegations of staining and moisture intrusion into the building and its columns, as well as cracks to the concrete flooring and walls, caused by "[i]mproper joints and sealant of joints." See ECF Nos. 1-1 at 65, 42 at 23-25, 32, 42. Etheridge Construction was the subcontractor responsible for the floor pavers at Margaritaville, see ECF No. 1-2 at 56, and Wallace Sprinkler performed the joint and sealant work, see ECF No. 1-5 at 10. Neither Etheridge Construction nor Wallace Sprinkler designed or constructed the concrete floor drains, columns, walls, or flooring. See ECF Nos. 1-2 at 56, 1-5 at 10, 51 at 9-10.
*1185 Thus, the allegations in the state court lawsuit do not solely encompass the cost of repairing or replacing the work of Etheridge Construction and Wallace Sprinkler. Instead, the state court lawsuit alleges additional, independent damage to the non-defective work product of other subcontractors, which was allegedly caused by the faulty workmanship of Etheridge Construction and Wallace Sprinkler. Because these allegations describe "property damage" under the CGL policies, the Court finds that the entire state court lawsuit fell within their coverage.
Even where allegations in a complaint fairly and potentially fall within the policy coverage, an insurer has no duty to defend where the complaint shows that a policy exclusion applies. State Farm Fire & Cas. Co. v. Tippett , 864 So.2d 31, 35 (Fla. 4th DCA 2003). In Florida, an insurer relying on a CGL policy exclusion to deny coverage bears the burden of proving that an exclusion applies. LaFarge Corp. v. Travelers Indem. Co. , 118 F.3d 1511, 1516 (11th Cir. 1997). Southern-Owners argues that even if the state court complaint establishes coverage, three policy exclusions extinguish its duty to defend: the contractual liability exclusion, the impaired property exclusion,[9] and the recall exclusion.[10] For the reasons that follow, the Court finds that none of these exclusions applies.
First, the contractual liability exclusion has no relevance to this case. This exclusion precludes coverage for amounts "the insured is obligated to pay [as] damages by reason of the assumption of liability in a contract or agreement." ECF No. 1-5 at 94. Construing this provision according to its plain meaning, it is clear that the exclusion applies when the insured has assumed another person or entity's liability to a third-party. Both Etheridge Construction and Wallace Sprinkler assumed the obligation to provide non-defective work when they entered into their respective subcontracts with Morette, but neither of them contracted or agreed to assume any other party's liability. See Subcontracts, ECF No. 1-2 at 56-59, 1-5 at 10-13. Absent such an assumption of liability, the contractual liability exclusion does not apply.
The impaired property exclusion also does not preclude coverage.[11] This exclusion is included in standard CGL policies to prevent an insured from claiming economic losses resulting from its own faulty workmanship, such as loss of use of its own product. See Transcontinental Ins. Co. v. Ice Systems of America, Inc. , 847 F.Supp. 947, 950 (M.D. Fla. 1994). In relevant part, the provision excludes from coverage " 'property damage' to 'impaired property' or property that has not been physically injured, arising out of ... [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.' " See ECF No. 1-5 at 47. As the *1186 Court has already determined that the state court lawsuit alleges that Etheridge Construction and Wallace Sprinkler's faulty workmanship caused "physical injury" to the work product of other subcontractors, it necessarily follows that the impaired property exclusion, on its face, is inapplicable.
Finally, the recall exclusion does not apply.[12] This exclusion, sometimes called the "sistership exclusion," excludes from coverage damages for removal of a product because of known or suspected defects in "sister" products. See Auto-Owners Ins. Co. v. American Building Materials, Inc. , 820 F.Supp.2d 1265, 1271 (M.D. Fla. 2011). Its purpose is "to limit the insurer's exposure in cases where, because of the actual failure of the insured's product, similar products are withdrawn from use to prevent the failure of these other products, which have not yet failed, but are suspected of containing the same defect." Id. In this case, the state court lawsuit does not assert any claim for damage based on remedial measures taken as a result of the withdrawal or recall of any product. See Harris Specialty Chemicals, Inc. v. U.S. Fire Ins. Co. , No. 3:98-cv-351-J-20B, 2000 WL 34533982, at *7 n.8 (M.D. Fla. 2000) (concluding that the "sistership" exclusion did not apply because there were no allegations that the product was recalled, prompting repairs on products that had not yet exhibited damage). Therefore, the Court finds that Southern-Owners has not met its burden of demonstrating that the recall exclusion applies.
In sum, the Court concludes that the state court lawsuit alleged "property damage" that fairly and potentially fell within the coverage of Etheridge Construction and Wallace Sprinkler's CGL policies and that none of the policy exclusions invoked by Southern-Owners apply. Accordingly, the Court finds that Southern-Owners owed a duty to defend Morette against the entire state court lawsuit; therefore, Morette is entitled to summary judgment on this issue.
B. Breach of Contract
Having determined that Southern-Owners owed a duty to defend Morette against the claims alleged in the state court lawsuit, the Court next addresses the question of whether Southern-Owners breached that duty. An insurer's duty to defend arises from the language of the insurance contract and policy. See Allstate Ins. Co. v. RJT Enters., Inc. , 692 So.2d 142, 144 (Fla. 1997) ; Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n , 483 So.2d 513, 516 (Fla. 3d DCA 1986). If the insurer erroneously fails to defend its insured, its conduct constitutes a breach of contract and "it-like any other party who fails to perform its contractual obligations-becomes liable for all damages naturally flowing from the breach." Carrousel , 483 So.2d at 516 ; see also Caldwell v. Allstate Ins. Co. , 453 So.2d 1187, 1191 (Fla. 1st DCA 1984) (stating that an insurance "company acts at its peril in refusing to defend its insured in that, if it is subsequently discovered that the company erroneously denied coverage, the company will *1187 be liable for damages for breach of its agreement under the policy"). Those damages may include the "reasonable costs and attorney's fees that [the insured] incurred in its [own] defense, as well as "any collateral damages that resulted from the breach." MCO Envtl., Inc. v. Agric. Excess & Surplus Ins. Co. , 689 So.2d 1114, 1116 (Fla. 3d DCA 1997).
In this case, the Court has already found that Southern-Owners had a contractual duty to defend Morette. It is undisputed that Morette repeatedly requested Southern-Owners provide it, as an additional insured, a defense against the claims alleged in the state court lawsuit. See ECF Nos. 1-4 at 199, 202; 1-5 at 4; ECF No. 1-6 at 84-89. However, Southern-Owners elected not to defend Morette. Southern-Owners did so "at its peril." See Caldwell , 453 So.2d at 1191. The failure to provide a defense to Morette is a clear breach of the duty to defend. See Caldwell , 453 So.2d at 1191. This is true even if Southern-Owners' failure to defend was based "on a mistaken but honest belief that coverage did not exist." See St. Paul Fire & Marine Ins. Co. v. Thomas , 273 So.2d 117, 121 n.7 (Fla. 4th DCA 1973) ; Nova Cas. Co. v. OneBeacon America Ins. Co. , 603 Fed.Appx. 898, 903-04 (11th Cir. 2015). Because Southern-Owners breached its contractual duty to defend as a matter of law, the Court finds that Morette is entitled to summary judgment as to liability only on the breach of contract claim.[13]
C. Duty to Indemnify
The Court next considers whether Southern-Owners has an indemnity obligation under the CGL policies.[14] An insurer's duty to indemnify is triggered when the insured becomes legally obligated to pay damages covered by the policy; that is, when there has been a final resolution of the underlying claims, whether by settlement or entry of a final judgment. See Northland Cas. Co. v. HBE Corp. , 160 F.Supp.2d 1348, 1360 (M.D. Fla. 2001) ; see also J.B.D. Const., Inc. v. Mid-Continent Cas. Co. , 571 Fed.Appx. 918, 928 (11th Cir. 2014) (same). If the insured cannot demonstrate that it suffered a covered loss under the policy, the insurer has no duty to indemnify. Id. Thus, "whereas the duty to defend is measured by the allegations of the underlying lawsuit, the duty to indemnify is measured by the facts as they unfold at trial or are inherent in the settlement agreement." Id. Facts "inherent in" a settlement agreement are those "facts extant at the time the settlement was reached." Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc. , 344 F.Supp.2d 1358, 1366 (M.D. Fla. 2004).
In this case, the state court lawsuit settled in or around February 2016. See ECF No. 31-2 at 4, 6-17; see also Case No. 3:15cv077, ECF No. 115. The undisputed record evidence indicates that Southern-Owners, on behalf of Etheridge Construction and Wallace Sprinkler, paid approximately $60,000 to settle the state court claims. See ECF No. 31-2 at 4, 7, 12. There is no evidence, or even argument, that Morette paid, or became legally obligated to pay, any portion of the settlement amount. As Morette has not suffered a covered loss under the CGL policies, there is nothing for Southern Owners to indemnify. The Court thus finds that Southern-Owners *1188 has no duty to indemnify Morette and that it is entitled to summary judgment on this issue.[15]
Accordingly, it is ORDERED :
1. Morette's Motion for Summary Judgment on Liability, Case No. 3:16cv110/MCR/EMT, ECF No. 31, is GRANTED , as follows:
a. Morette's motion for summary judgment is GRANTED as to its request for a declaration in its favor regarding Southern-Owners' duty to defend. The Court DECLARES that Southern owed a duty to defend Morette against the claims alleged in the state court lawsuit, under the Additional Insured Endorsement provision of Etheridge Construction and Wallace Sprinkler's CGL policies.
b. Morette's motion for summary judgment is GRANTED with respect to liability only on its claims for breach of contract.
2. Southern-Owners' Motion for Summary Judgment, Case No. 3:15cv077/MCR/EMT, ECF No. 46, is GRANTED in part and DENIED in part, as follows:
a. Southern-Owners' motion for summary judgment is DENIED as to its request for a declaration that it owed no duty to defend Morette in the state court lawsuit, for the reasons stated in this Order.
b. Southern-Owners' motion for summary judgment is GRANTED as to its request for a declaration in its favor regarding its indemnity obligation. The Court DECLARES that Southern-Owners has no duty to indemnify Morette under Wallace Sprinkler's CGL policy, for the reasons stated in this Order.
3. In light of the Court's determination that Southern-Owners owed a duty to defend Morette against the state court lawsuit, it is appropriate to refer these cases to Magistrate Judge Gary R. Jones for a settlement conference, on the amount of damages, to be held within 45 days. If the parties reach an agreement, they must notify the Court and stipulate to voluntary dismissal of this action within 30 days of the mediation. If the parties cannot agree on the amount of damages, they must confer and file a joint report, within 30 days of the mediation, indicating whether the damages issue may be resolved through supplemental briefing or whether it should be set for trial.
4. Southern-Owners is directed to notify the Court as to how it intends to proceed with respect to the eight remaining defendants in Consolidated Case No. 3:15cv077/MCR/EMT, who have not been dismissed: Little Sabine, Inc., Etheridge Construction, All Stop Waterproofing, L.L.C., R.C. Aluminum Industries, Inc., Construction Plastering Company, Inc., Commercial Concrete Systems, Inc., Walker Painting, Inc., and Liberty Mutual Insurance Company. See First Amended Complaint, Case No. 3:16cv110, ECF No. 19. This notification is due within seven days of the date of this Order.
*1189 DONE and ORDERED on this 19th day of September, 2017.

The parties agree that the relevant provisions of Etheridge Construction and Wallace Sprinkler's subcontracts are identical; therefore, the Court analyzes them together.

The parties agree that the relevant provisions of Etheridge Construction and Wallace Sprinkler's CGL policies are substantively identical; therefore, the Court will analyze the scope of their coverage together.

Florida Statutes 558.004 provides, in relevant part, that:
(1)(a) In actions brought alleging a construction defect [arising from work performed under a contract], the claimant shall, at least 60 days before filing any action ... serve ... written notice of claim ... on the person with whom the claimant contracted.
(b) The notice of claim must describe in reasonable detail the nature of each alleged construction defect and, if known, the damage or loss resulting from the defect.

Etheridge Construction subcontracted to "furnish all labor and materials and perform all work necessary to complete" a number of specific and discrete construction tasks, including metal stud and arch framing, drywalling, sheathing, sealant and finishing work. See ECF No. 1-5 at 10-11. Wallace Sprinkler subcontracted to "furnish all labor and materials and perform all work necessary to complete" the landscaping, irrigation, and paver work for the Margaritaville project. See ECF No. 31-1 at 15.

After receiving notice that the state court lawsuit had been resolved, the Court dismissed Southern-Owners' original action without prejudice. See Case No. 3:15cv077, ECF No. 120. On August 15, 2016, Southern-Owners filed a First Amended Complaint against the same defendants and seeking the same declaratory relief sought in its original complaint. See id. , ECF No. 122.

Southern-Owners brought suit against thirteen defendants: Morette, Sabine, Wallace Sprinkler, Etheridge Construction, All Stop Waterproofing, L.L.C., R.C. Aluminum Industries, Inc., Construction Plastering Company, Inc., Commercial Concrete Systems, Inc., Walker Painting, Inc., Jones Flooring, Inc., Sto Corporation, Liberty Mutual Insurance Company, and Western Surety Company. See Case No. 3:15cv077/MCR/EMT, ECF No. 122. The docket reflects that, of this group, four defendants have been dismissed without prejudice: Wallace Sprinkler, Jones Flooring, Inc., Sto Corporation, Western Surety Company. See ECF Nos. 30, 36, 37.

"[T]he law of the state where an insurance contract [wa]s executed is the law that governs the rights and liabilities of the parties in determining an issue of insurance coverage." Rando v. Gov't Employees Ins. Co. , 39 So.3d 244, 247 (Fla. 2010) (internal quotations omitted). In this case, there is no dispute that the subject CGL policies were issued and executed in Florida. Therefore, the Court applies Florida's substantive law in determining the coverage issues it presents.

Notice 1 is comprised of a letter, dated May 5, 2011, to Morette from Sabine's attorney and the accompanying General Deficiency Report. See ECF No. 42-1. Notice 2 is a two-page letter from Morette's attorney to Etheridge Construction, which was copied to Southern-Owners and several other recipients. See ECF No. 1-6 at 81-82.

This exclusion is titled, in full, "Damage To Impaired Property Or Property Not Physically Injured." See ECF No. 1-5 at 47.

This exclusion is titled, in full, "Recall Of Products, Work Or Impaired Property." See ECF No. 1-5 at 47.

The CGL policies define "impaired property" as:
[T]angible property, other than "your product" or "your work," that cannot be used or is less useful because it:
a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement
if such property can be restored to use by:
a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
b. Your fulfilling the terms of the contract or agreement.
See ECF No. 1-5 at 109.

The recall exclusion provides that the CGL policy does not apply to:
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of
(1) "Your product";
(2) "Your work"; or
(3) "Impaired property"
if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.
See ECF No. 1-5 at 47.

Morette moved for summary judgment as to liability only on the breach of contract claim and, in its briefing, indicated that it would address damages at a later date.

In its Reply brief, Morette explicitly abandoned its claim for indemnity. See ECF No. 42 at 15. Nonetheless, because Southern-Owners moved for summary judgment on its request for a declaration that it owes no duty to indemnify, the Court finds it appropriate to address the issue of indemnification.

The Court expresses no opinion on whether Southern-Owners would have owed a duty to indemnify if Morette had suffered a covered loss under the CGL policies.