OPINION OF THE COURT
Phillip R. Rumsey, J.
The plaintiff Evelyn A. Gregg, by and through her son Dennis H. Gregg, moves for an order declaring that Wynwood Com *896 mons (formerly known as Liberty Commons) meets the definition of a nursing home under a long-term care insurance nursing home indemnity policy (Policy) issued to plaintiff by defendant IDS Life Insurance Company of New York (IDS). The plaintiff also seeks payment of the daily benefit under the Policy retroactive to April 23, 1997, a declaration that IDS has waived its right to the collection of premiums during plaintiff’s stay at Wynwood Commons, and reimbursement by IDS of premiums paid on the Policy from August 15, 1997.
IDS opposes the summary judgment motion and cross-moves for an order declaring that Wynwood Commons is not a nursing home as defined in the Policy issued by IDS and that plaintiff is not entitled to benefits thereunder.
The plaintiff purchased long-term care insurance and was issued the Policy on February 1, 1991.
The Policy provides for the payment of the daily benefit to commence on the 21st day after confinement in a nursing home, as that term is defined in the Policy. The Policy provides for a waiver of premiums that come due after 110 days of confinement to a nursing home.
On January 10, 1997 the plaintiff suffered a right middle cerebral stroke with residual left side hemiparesis. Her personal physician Daniel Carlson, M.D. attests that as a result the plaintiff is no longer able to live alone and requires 24-hour nursing care.
Since April 3, 1997 the plaintiff has been living at Wynwood Commons.
Wynwood Commons, owned by its parent company Alternative Living Services, Inc. (ALS), is located in the Village of Manlius, New York. It provides independent and enhanced living programs for older adults in a residential building.
Where the care needed by the resident exceeds that provided for by Wynwood Commons’ regular services, the resident may purchase additional services through ALS or other certified home health agency. ALS recently became licensed as a licensed home care services agency. On May 15, 1998, the plaintiff began receiving home care services from ALS. Before that time, plaintiff received home care services from Brighton Management Services Home Care and then from Integrity Home Care Services, Inc. (Integrity).
Integrity, a licensed agency, provided services including nursing care to plaintiff (prior to May 15, 1998) at Wynwood Commons. Integrity has licensed practical nurses on duty to *897 provide services to residents at Wynwood Commons and also has two registered nurses who are available on call when not on duty. Apparently the services offered by Integrity (and formerly used by plaintiff) are equivalent to the services now being provided by ALS. The plaintiff has contracted with ALS for what is known as “Care Package IV”.
The plaintiff has the following documents on file at Wynwood Commons: authorization for release of health records, do not resuscitate (DNR) order, health care proxy, Integrity Home Care Services patient admission health history and physical assessment records, physician’s orders, nurse progress notes and medication administration record, and physician visit forms.
The plaintiff requires assistance with eating, dressing, bathing and general hygiene and with her medication. She is confined to a wheelchair and requires the assistance of at least two people to transfer her to and from sitting and standing positions.
IDS denied coverage to plaintiff on the basis that Wynwood Commons is not appropriately licensed, that it does not have a doctor available to furnish emergency medical care, and that plaintiff does not have a sufficient level of “functional incapacity” to require the services of a nursing home.
The Policy defines “Nursing Home” as:
“A Facility or distinctly separate part of a hospital or other institution which is licensed by the appropriate licensing agency to engage primarily in providing nursing care and related services to inpatients and:
«^provides 24-hour-a-day nursing service under a planned program of policies and procedures which was developed with the advice of, and is periodically reviewed and executed by, a professional group of at least one doctor and one nurse; and
“*Has a doctor available to furnish medical care in case of emergency; and
“*Has at least one nurse who is employed there full time (or at least 24-hours-per-week if the facility has less than 10 beds); and
“*Has a nurse on duty or on call at all times; and
“*Maintains clinical records for all patients; and
“*Has appropriate methods and procedures for handling and administering drugs and biologicals.”
The plaintiff argues that Wynwood Commons fits the Policy definition of a nursing home because of the location of her *898 personal physician located approximately one mile from Wynwood Commons, the presence of nurses at Wynwood Commons, the nursing services she has purchased from Integrity (or ALS), and the clinical records kept by ALS at Wynwood Commons.
IDS argues that Wynwood Commons simply is not a facility licensed by the appropriate licensing agency to engage primarily in providing nursing care to inpatients.
An insurance contract, where it is unambiguous, should be read and enforced according to the plain meaning of its words and its provisions should be liberally construed to uphold the policy whenever possible with the caveat that any ambiguity in the policy provisions is to be resolved against the insurer (Michigan Millers Mut. Ins. Co. v Christopher, 66 AD2d 148).
No one contends that Wynwood Commons is licensed as a nursing home. Hence, it does not meet the first (critical) element of the Policy definition. The argument that the licensing requirement is fulfilled by hiring licensed services is fallacious. The plain meaning of the Policy language is that the facility, hospital, or institution be licensed to provide nursing care.
The plaintiff attempts to “bundle” various medical/nursing services she secured, import them to a residential setting and thereby characterize Wynwood Commons as a nursing home.
Selecting and purportedly satisfying one or the other component of the Policy definition of nursing home does not reasonably or fairly comport with the Policy language and intent.
The fact that Wynwood Commons has on file certain records pertaining to plaintiff does not demonstrate that it keeps enumerated “clinical records” on “all patients”. It would appear to be good judgment and business practice by an organization catering to an elderly population to collect records such as health care proxies, DNR orders, and health histories on its residents.
The plaintiff signed a “Residency Agreement” or “lease” with Wynwood Commons which provides that the premises are to be occupied solely for private residential housing. The “Standard Services” include meal service, unit cleaning service, utilities, and cable. Optional services may include meals for guests, delivery of meals to apartments, and personal care. The -Residency Agreement does not cover or offer the services provided in the “Care Package IV” purchased by the plaintiff from ALS or Integrity.
The determination of coverage herein depends on the clear language of the Policy and an equally clear view of the func *899 tion of Wynwood Commons. It is not an entity licensed to provide nursing care, it does not have a medical doctor available, and it has not been demonstrated that it keeps clinical records on each resident (patient). Its asserted purpose, in part, is “helping individuals live at Wynwood Commons, their home, for the rest of their lives. That means many Wynwood Commons residents never have to move to a nursing home” (affidavit of Dennis H. Gregg, exhibit A, Wynwood Commons brochure).
The unambiguous language of the Policy sets out in a conspicuous manner its definition of a nursing home. It also points out what entities do not qualify: “note: The above requirements are typically met by licensed skilled nursing facilities, comprehensive nursing care facilities and intermediate nursing care facilities as well as some specialized wards, wings and units of hospitals. Those requirements are generally not met by: rest homes; homes for the aged; sheltered living accommodations; residence homes; or similar living arrangements.”
IDS has met its burden to show that its interpretation of the Policy definition of nursing home is not only reasonable, but it is the only fair interpretation (Saks v Nicosia Contr. Corp., 215 AD2d 832, 833).
The plaintiffs motion is denied. The defendant’s motion is granted.
The court declares that Wynwood Commons is not a “Nursing Home” as defined in the long-term care insurance nursing home indemnity policy issued by IDS Life Insurance Company of New York to Evelyn A. Gregg and she is not entitled to benefits thereunder.