Keith **KENDALL**, as Power of Attorney of Betty S. Kendall, Plaintiff,

v.

**GENWORTH LIFE INSURANCE COMPANY, Defendant.**

Case No: 8:15-cv-2328-T-27AAS

United States District Court, M.D. Florida, Tampa Division.

Signed June 22, 2016

Jason P. Kairalla, James F. Jorden, Carlton Fields Jorden Burt, P.A., Miami, FL, for Defendant.

G. Wrede Kirkpatrick, Hines Norman Hines, P.L., Tampa, FL, for Plaintiff.

## ORDER

JAMES D. WHITTEMORE, United States District Judge

**BEFORE THE COURT** is Defendant Genworth Life Insurance Company's Motion for Judgment on the Pleadings (Dkt. 11), which Plaintiff opposes (Dkt. 14). Upon consideration, the Motion is GRANTED. The facility in which Betty Kendall resided was not "licensed by the appropriate licensing agency to engage primarily in providing nursing care and related services to inpatients" and therefore does not constitute a "nursing home" under the terms of the Policy.

## I. BACKGROUND

In 1991, Betty Kendall purchased a Long Term Care Policy (the "Policy") from AMEX.[1] (Dkt. 2 ¶ 6). The Policy provides for benefits to Mrs. Kendall for as long as she is required to be a resident of a "nursing home." (*Id.* ¶ 14, Ex. A at 7). The Policy defines "nursing home" as:

A facility or distinctly separate part of a hospital or other institution which is licensed by the appropriate licensing agency to engage primarily in providing nursing care and related services to inpatients and:

- Provides 24 hour a day nursing services under a planned program of policies and procedures which

was development with the advice of, and is periodically review and executed by, a professional group of at least one physician and one Nurse; and

- Has a Doctor available to furnish medical care in case of emergency; and

- Has at least one Nurse who is employed there full time (or at least 24 hours per week if the facility has less than 10 beds); and

- Has a Nurse on duty or on call at all times; and

- Maintains clinical records for all patients; and

- Has appropriate methods and procedures for handling and administering drugs and biologicals.

NOTE: The above requirements are typically met by licensed skilled nursing facilities and intermediate nursing care facilities as well as some specialized wards, wings and units of hospitals. Those requirements are generally NOT met by: rest homes, homes for the aged; sheltered living accommodations; residence homes; or similar living arrangements.

(Dkt. 2, Ex. A at 6; Dkt. 11-1 at 7).

In April 2011, Mrs. Kendall was admitted to Belvedere Commons of Sun City Center ("Belvedere"), licensed by the State of Florida as an assisted living facility. (*Id.* ¶¶ 10, 17). Mrs. Kendall's son, who holds her power of attorney, made a claim for benefits under the Policy. (*Id.* ¶¶ 3, 11). Defendant denied that claim, concluding that Belvedere did not meet the definition of a "nursing home" under the Policy. (*Id.* ¶ 13). Plaintiff brings this breach of contract action arising out of Defendant's de-

---

1. Defendant is the successor of AMEX under     the Policy. (Dkt. 2 ¶ 9).

nial of Plaintiff's claim for benefits related to Mrs. Kendall's nursing home stay.

## II. STANDARD

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299,1301 (11th Cir.2011). All material facts alleged in the non-moving party's pleadings are accepted as true, and those facts are viewed in the light most favorable to the non-moving party. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir.2014).

## III. DISCUSSION

Defendant moves for judgment on the pleadings based on its contention that Belvedere does not meet the definition of a "nursing home" under the Policy because it is not "licensed by the appropriate licensing agency to engage primarily in providing nursing care and related services." Plaintiff argues that the term "nursing care" in the Policy's definition of nursing home is not defined and therefore is ambiguous and that the Policy does not require the facility to be licensed as a nursing home.

"The court must enforce the insurance policy as written if the terms are unambiguous...." *Safeway Insurance Co. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005).[2] "Whether a provision of an insurance policy is ambiguous is a question of law." *Id.* "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Id.* That is, "[w]hen analyzing an insurance policy, a court gives words used in the policy their

common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them." *State Farm Mutual Automobile Insurance Co. v. Brown*, 26 So.3d 1167, 1169 (Ala.2009).

"A term is ambiguous only if, applying the ordinary meaning, one would conclude that the provision containing the term is reasonably susceptible to two or more constructions." *Herrera*, 912 So.2d at 1144 (internal quotes omitted). "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Id.* at 1143.

It is undisputed that Belvedere is licensed "by the appropriate licensing agency" as a standard assisted living facility, not as a nursing home. Although the Policy does not define "nursing care or related services," as used in the Policy's definition of a nursing home, it is not ambiguous. According to the plain meaning of the Policy's definition of nursing home, the facility must be *licensed* to *primarily* provide *nursing care*. And in addition to the license requirement, the Policy lists certain services that, at a minimum, the facility must provide. Other courts that have reviewed identical policy language agree that the definition is not ambiguous. *See Milburn v. Life Inv'rs Ins. Co. of Am.*, 511 F.3d 1285, 1288 (10th Cir.2008); *Gillogly v. Gen. Elec. Capital Assur. Co.*, 430 F.3d 1284, 1293 (10th Cir.2005); *Geary v. Life Inv'rs Ins. Co. of Am.*, 508 F.Supp.2d 518, 523 (N.D.Tex.2007); *Gregg ex rel Gregg v. IDS Life Ins. Co. of New York*, 178 Misc.2d 895, 899, 681 N.Y.S.2d 451, 454 (1998), *aff'd*, 261 A.D.2d 799, 692 N.Y.S.2d 182 (1999).

---

**2.** The Policy expressly provides it was "delivered in and governed by the laws of Alabama." (Dkt. 11–1 at 1).

Moreover, Florida law distinguishes between assisted living facilities and nursing homes.[3] A nursing home is defined as: "[A]ny facility which provides nursing services as defined in part I of chapter 464 and which is licensed according to this part." [4] Fla. Stat. 400.021(12). On the other hand, an assisted living facility is defined as:

> [A]ny building or buildings, section or distinct part of a building, private home, boarding home, home for the aged, or other residential facility, whether operated for profit or not, which undertakes through its ownership or management to provide housing, meals, and one or more personal services for a period exceeding 24 hours to one or more adults who are not relatives of the owner or administrator.[5]

Fla. Stat. § 429.02(5).

That an assisted living facility holding a standard license "may also employ or contract with a person licensed under part I of chapter 464 to administer medications and perform other tasks as specified in s.

429.255," Fla. Stat. § 429.07(3)(a), does not satisfy the Policy's first requirement that the facility be licensed to engage primarily in providing nursing care. And the legislature expressly recognizes "that assisted living facilities should be operated and regulated as residential environments with supportive services and not as medical or nursing facilities," further distinguishing a nursing facility/home from an assisted living facility.[6] Fla. Stat. § 429.01.

Accordingly, Defendant Genworth Life Insurance Company's Motion for Judgment on the Pleadings (Dkt. 11) is **GRANTED.** The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Defendant Genworth Life Insurance Company and against Plaintiff Keith Kendall and **CLOSE** the file.

**DONE AND ORDERED** this 22nd day of June, 2016.

---

3. White the contract claim is governed by Alabama law, Belvedere is located in Hillsborough County and its licensing is therefore governed by Florida law. *See* Fla. Stat. §§ 429.02(3), 429.07(1) ("A license issued by the [Florida Agency for Healthcare Administration] is required in order to operate an assisted living facility in [Florida].") During the relevant time period, Belvedere was licensed by the Florida Agency for Healthcare Administration as a standard assisted living facility. (*See* Dkt. 2 ¶ 10).

4. "Nursing service" means such services or acts as may be rendered, directly or indirectly, to and in behalf of a person by individuals as defined in s. 464.003. Fla. Stat. § 400.021(13).

5. " 'Personal services' means direct physical assistance with or supervision of the activities of daily living and the self-administration of medication and other similar services which the department may define by rule. *"Personal services" shall not be construed to mean the provision of medical, **nursing**, dental, or men-*

*tal health services."* Fla. Stat. § 429.02(17) (emphasis added).

6. Furthermore, an assisted living facility may be licensed to provide "limited nursing services," a type of care beyond that which a facility licensed to provide standard assisted living care may provide. *See* Fla. Stat. § 429.07(3)(a), (c). " 'Limited nursing services' means acts that may be performed by a person licensed under part 1 of chapter 464. Limited nursing services shall be for persons who meet the admission criteria established by the department for assisted living facilities and shall not be complex enough to require 24-hour nursing supervision and may include such services as the application and care of routine dressings, and care of casts, braces, and splints." Fla. Stat. § 429.029(13). It follows that an assisted living facility that is not even licensed to provide limited nursing services cannot qualify as a facility licensed to engage *primarily* in provided nursing care.