In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1224

ATLANTIC CASUALTY INSURANCE
COMPANY,

*Plaintiff-Appellee,*

*v.*

JUAN GARCIA and MARIA GARCIA,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:15-cv-00066-JEM — **John E. Martin**, *Magistrate Judge.*

ARGUED OCTOBER 23, 2017 — DECIDED DECEMBER 22, 2017

Before BAUER and HAMILTON, *Circuit Judges,* and DARROW,[*]
*District Judge.*

---

[*]   Of the United States District Court for the Central District of Illinois,
sitting by designation.

BAUER, *Circuit Judge.*   Defendants-appellants, Juan and Maria Garcia ("the Garcias"), filed a claim with plaintiff-appellee, Atlantic Casualty Insurance Company ("Atlantic"), for insurance coverage. Atlantic responded by seeking declaratory judgment. The Garcias replied with counterclaims for breach of the policies and bad faith for denial of their claim. The district court granted summary judgment in favor of Atlantic. The Garcias now seek reversal.

## I.  BACKGROUND

The Garcias purchased commercial property at 2316 Ripley Street, Lake Station, Indiana ("the Property"), on August 9, 2004. During the Garcias' ownership, the Property was used to operate an automobile repair shop and a day spa. Prior to their ownership, the Property was used as a dry cleaning facility from approximately 1946 until 2000. The site contained six underground storage tanks used by the dry cleaning company. Four of these tanks were used for petroleum-based Stoddard solvent, one was used for gasoline, and the last for heating oil.

In 1999, the dry cleaning company reported a newly discovered leak from the Stoddard solvent tanks to the Indiana Department of Environmental Management ("IDEM"). In 2000, a site investigation was conducted, an Initial Site Characterization Report was prepared, and five groundwater monitoring wells were installed. On February 9, 2001, IDEM requested additional investigation to fully delineate the nature and extent of the petroleum pollution, as well as testing for volatile organic compounds. Due to a lack of information provided

from the February 2001 request, IDEM requested additional testing on April 8, 2004.

The Garcias claim they had no knowledge of the preexisting environmental contamination before insuring with Atlantic. In September 2014, a letter from Environmental Inc., dated July 10, 2014, brought the contamination to the Garcias' attention. In the spring of 2015, the Garcias hired Environmental Inc. to investigate the Property. This investigation showed that the chemicals from the Stoddard solvent tanks, Perchloroethylene solvent, and heating oil still affected the Property.

Atlantic insured the Property with two policies that ran consecutively, starting on June 25, 2009, and ending on June 25, 2011. Both were substantially similar Commercial General Liability Coverage ("CGL") policies. Both contained relevant exclusion provisions that modified the CGL policies through a "Claims in Process" exclusion and a "Total Pollution Exclusion."

The "Insuring Agreement" language under the "Bodily Injury and Property Damage Liability" coverage states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which

this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

The relevant language from the "Claims in Process" exclusion states:

1. any loss or claim for damages arising out of or related to "bodily injury" or "property damage", whether known or unknown:

    a. which first occurred prior to the inception date of this policy; or

    b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy.

2. any loss or claim for damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.

The relevant language from the "Total Pollution Exclusion" states:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual,

> alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Atlantic filed a complaint seeking declaratory relief after the Garcias tendered the IDEM claim to Atlantic. The Garcias responded with a counterclaim for breach of the CGL policies and for bad faith denial of their IDEM claim. Atlantic then moved for summary judgment and the Garcias responded with a partial motion for summary judgment. The court interpreted the "Claims in Process" exclusion to preclude coverage for losses or claims for damages arising out of property damage—known or unknown—that occurred or was in the process of occurring before the policy's inception. Both parties agreed that the damage happened before inception of the policies. Thus, the district court granted summary judgment in favor of Atlantic and held that coverage for the Garcias' claim was excluded. Since there was no coverage, the court granted summary judgment in favor of Atlantic over the Garcias' bad faith claim as well. The Garcias now seek reversal.

## II. DISCUSSION

We review *de novo* a district court's interpretation of an insurance policy and its decision to grant summary judgment. *W. Bend Mut. Ins. Co. v. U.S. Fid. & Guar. Co.*, 598 F.3d 918, 921 (7th Cir. 2010). A federal court sitting in diversity "applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Inc. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Thus, we must apply Indiana law and turn to the "most intimate contacts" rule. *Carlisle v. Deere & Co.*, 576 F.3d 649, 563 (7th Cir.

2009). Under the "most intimate contact" rule, the Supreme Court of Indiana has "recognized that '[a]n insurance policy is governed by the law of the principal location of the insured risk during the term of the policy.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 814 (Ind. 2010) (quoting *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005)). With the Property located and the policies delivered in Indiana, Indiana's substantive law applies here.

"In Indiana, the meaning of an insurance policy is a matter of law, and in general the same rules of construction apply to insurance policies as to other contracts." *Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 729 (7th Cir. 2012). "'Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence,' and if reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246-47 (Ind. 2005) (quoting *Burkett v. Am. Family Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000)). "Ambiguities are construed strictly against the insurer to further the general purpose of the insurance contract to provide coverage." *Id.* at 247. This is particularly true where an exclusion provision is involved. *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012). While exclusions limiting coverage are allowed, "such limitations must be clearly expressed to be enforceable." *Id.* "Interpretation of the contract should harmonize its provisions, rather than place the provisions in conflict." *Allgood*, 836 N.E.2d at 247.

The Garcias argue that the "Claims in Process" exclusion is ambiguous. In so arguing, the Garcias state that the three parallel conditions following the phrase, "whether known or

unknown," could modify "any loss or claim for damages," rather than "'bodily injury' or 'property damage,'" as the district court found. Accepting the Garcias' interpretation would exclude coverage for a *claim* for damages that occurred or was in the process of occurring before inception of the policy. On the other hand, accepting the district court's interpretation would exclude coverage for any *injury or damage* that occurred or was in the process of occurring before inception of the policy.

We disagree with the Garcias and find the exclusion language unambiguous. Looking at the form of the exclusion, which states, "any loss or claim for damages arising out of or related to 'bodily injury' or 'property damage,' whether known or unknown," a comma would follow "claim for damages" if the exclusion sought to modify the timing of the *claim* rather than the *damage*. This would turn the "'bodily injury' or 'property damage'" into a dependent clause. If that were the case, the independent clause would read, "any loss or claim for damages, […] whether known or unknown," and we would interpret it as the Garcias attempt to do here. With the omission of this comma, the "whether known or unknown" language clearly modifies what precedes it—"'bodily injury' or 'property damage.'"

Furthermore, the Garcias' interpretation would make the third condition redundant. If we accepted the Garcias' interpretation, the second condition, which reads, "which is, or is alleged to be, in the process of occurring," would exclude any claims "in the process of occurring." The third condition, which reads, "which is in the process of settlement, adjustment or 'suit,'" would exclude any claims "in the process of settle-

ment, adjustment or 'suit.'" Claims in the process of settlement, adjustment or suit, are also claims in the process of occurring. Thus, the second condition, the broader of the two, would completely encompass the third condition, and create a redundancy.

Therefore, we read the exclusion to preclude coverage for losses or claims for damages arising out of property damage—known or unknown—that occurred or was in the process of occurring before the policy's inception. Thus, if the property damage happened before the policy period, but the damage had not been discovered, the exclusion bars coverage. With no dispute that the damage to the Property began before the inception of the policies, we find that the "Claims in Process" exclusion bars recovery on behalf of the Garcias.

Because the "Claims in Process" exclusion bars recovery, we find no need to address the "Total Pollution Exclusion" issue. Additionally, because the "Claims in Process" exclusion bars recovery, we find a lack of bad faith as to Atlantic's claim denial.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's findings.