MARY S. SCRIVEN, UNITED STATES DISTRICT JUDGE
THIS CAUSE comes before the Court for consideration of Plaintiff's Motion for Final Summary Judgment, (Dkt. 38), Defendant Mark Nelson's response in opposition thereto, (Dkt. 40), and Plaintiff's reply in support of its motion. (Dkt. 42)
On January 8, 2016, Nationwide Mutual Insurance Company ("Nationwide") issued a Certificate of Liability Insurance to "Josh Cooper DBA: Cooper Speed - Strength School," which provides liability insurance coverage to "Josh Cooper DBA: Cooper Speed - Strength School" from January 1, 2016 to January 1, 2020. The insurance policy purports to guarantee payment of damages that the insured becomes legally obligated to pay because of bodily injury and property damage to which the insurance applies. It also provides that Nationwide would have a duty to defend against suits seeking damages covered under the policy. The policy provides that the insurance applies only to "individual and group instruction of fitness, dance or exercise directly conducted by you, as reported to the company." (Dkt. 41-1 at 8) It also excludes "instruction of sports skills activities." (Dkt. 41-1 at 6) It does not define either activity.
During the coverage period, Mark Nelson ("Nelson"), on behalf of his minor son, filed a state court action seeking damages from Josh Cooper ("Cooper") and the Cooper Speed-Strength School, Inc. ("the School") for an incident involving his son at the School. The underlying complaint describes an unfortunate chain of events in which the minor-plaintiff was injured while engaging in an agility drill devised and prepared by Josh Cooper, a skills trainer, and the Cooper Speed-Strength School, Inc. The complaint explains that the minor was running alongside the skills trainer toward a set goal, when the skills trainer ran into a plate glass window. The window shattered on impact, and a jagged piece of glass caused severe cuts to the minor's hand and arm. On behalf of the minor, Nelson alleges a negligence claim against Cooper and the School, among others.
*1254 Nationwide filed the instant Motion for Summary Judgment asserting that, as a matter of law, the allegations in the underlying complaint do not implicate the subject insurance policy and, thus, do not give rise to a duty to defend Cooper or the School. It contends that the insurance policy covers only Josh Cooper, individually, and only for damages arising from fitness, dance, and exercise instruction conducted directly by Cooper. Nationwide claims the conduct that allegedly caused injury involved agility drills, which Nationwide characterizes as a sports skills activity, which is expressly excluded under the Policy, and claims further that the activity was not conducted directly by Cooper. It also disclaims a duty to defend Cooper's business entity, Cooper Speed-Strength School, Inc. because it asserts that the Policy does not cover the School at all.
Nelson claims that the policy covers both Cooper and the School due to an endorsement that adds the School as an additional insured. Nelson also asserts that the language in the underlying complaint does not allege that Cooper or the School was involved in "sports skills training," but rather alleges general fitness training, which is expressly covered under the policy.
To prevail on this motion, Nationwide must show that there is no reading of the underlying complaint that invokes any basis for coverage under its insurance policy. The applicable standard of proof, referred to as the "eight corners doctrine,"[1] requires Nationwide to demonstrate that a comparison of the four corners of the complaint with the four corners of the policy reveals no scenario in which coverage would be provided under the policy, thereby vitiating the insurer's duty to defend. This it cannot do. Regardless of whether they are true, the broad allegations in the Underlying Complaint facially implicate the insurance provisions providing coverage for both Josh Cooper and the Cooper Speed-Strength School, Inc. and triggering Nationwide's duty to defend. Thus, for the reasons stated herein, the Court DENIES Nationwide's Motion for Summary Judgment.
I. BACKGROUND
1. Insurance Policy
Nationwide issued under its "Fitness Instructors" program Policy No. 6B RPG 5861300 ("Insurance Policy") to "Sports, Leisure & Entertainment RPG DBA: Fitness Instructor" for the policy period from January 1, 2016 to January 1, 2020. (Dkt. 41 at ¶ 1; Dkt 41-1 at 1) The named insured on the Insurance Policy was designated "Sports, Leisure & Entertainment Risk Purchasing Group and its enrolled member fitness or dance instructors whose names are on file with the company and for which an appropriate premium has been paid and to whom a certificate of insurance has been issued." (Dkt. 41 at ¶ 5; Dkt 41-1 at 3) Thus, in order to be insured under the Insurance Policy, a member of the risk purchasing group would need to be issued a certificate of insurance.
On January 8, 2016, Josh Cooper ("Cooper"), through his retail agent Vincent Ruilova, submitted a final summary of the renewal application ("Application"), which appears to be a summary of an online application for coverage under the Insurance Policy. (Dkt. 41 at ¶ 5; Dkt. 26-2) Under the section titled "Terms & Conditions," the Application states, "This program only provides coverage for your individual *1255 operations as an instructor," and the Policy "does not extend coverage for activities conducted by employees or anyone else assisting or performing on your behalf." (Dkt. 41 at ¶ 6; Dkt. 26-2 at 2) Notably, the Insurance Policy issued does not contain a similar provision, and indeed, contains provisions suggesting otherwise. (See e.g., Dkt. 41-1 at 56 (noting that sponsors, co-promoters, and owners, managers, and lessors of premises are insured for "liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf"); Dkt. 41-1 at 35 (providing coverage for "you and your fitness/dance business entity") ).
On the same date, on behalf of Nationwide, a Certificate of Liability Insurance was issued providing coverage under the Policy for "Josh Cooper DBA: Cooper Speed - Strength School." (Dkt. 41 at ¶ 8; Dkt. 26-3) The Policy's Commercial General Liability Coverage affords both Bodily Injury and Property Damage Liability Coverage and Legal Liability to Participants Coverage, subject to certain terms, conditions, limitations and exclusions. (Dkt. 41 at ¶ 9; Dkt. 41-1) The Insurance Policy contains a number of endorsements and amendments, which purport to either add, limit, or exclude the coverage under the policy.
The relevant coverage provisions under the Insurance Policy are as follows:
1. The Commercial General Liability Coverage Form provides, in part, that "[Nationwide] will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (Dkt. 41-1 at 19)
2. The Insurance Policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person. This includes mental anguish, mental injury, shock, fright, humiliation, emotional distress or death resulting from bodily injury, sickness or disease." (Dkt. 41-1 at 31)
3. An endorsement entitled "LEGAL LIABILITY TO PARTICIPANTS" ("Legal Liability to Participants Endorsement") that modifies the Commercial General Liability Coverage Form provides, in pertinent part, that:
[Nationwide] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to any "participants." [Nationwide] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Nationwide] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or suit that may result.
(Dkt. 41-1 at 47) The endorsement defines "participants" as "[a]ny person who is participating in athletic or recreational activities, and/or training programs conducted by you." (Dkt. 41-1 at 48)
The pertinent exclusions and limitations under the Insurance Policy are as follows:
1. The "DESIGNATED OPERATIONS" exclusion ("Designated Operations Exclusion") provides: "This insurance does not apply to the operations in the Schedule of this endorsement, regardless of whether *1256 such operations are conducted by you on your behalf or whether the operations are conducted for yourself or for others." (Dkt. 41-1 at 6) The Schedule in the Designated Operations Exclusion lists, inter alia, "[i]nstruction of sports skills activities" and "[o]wnership, operation or management of a fitness, dance or sports facility" among the "designated operations" to which the insurance does not apply. (Dkt. 41-1 at 6)
2. The "LIMITATION OF COVERAGE TO DESIGNATED PREMISES, ACTIVITES OR OPERATIONS" ("Designated Activities Limitation") endorsement provides, in pertinent part: "All coverages are modified as follows: This insurance applies only to: ... [t]he activities or operations shown in the Schedule." (Dkt 41-1 at 8) The Schedule in the Designated Activities Limitation lists the following "Activities and Operations": "Individual or group instruction of fitness, dance or exercise directly conducted by you, as reported to the company" as the "Designated Activities" to which the insurance does apply. (Dkt. 41-1 at 8)
Therefore, the policy provides that the insurance applies only to "individual or group instruction of fitness, dance or exercise directly conducted by you, as reported to the company," but excludes "ownership, operation or management of a fitness, dance or sports facility" and "instruction of sports skills activities." (Dkt. 41-1 at 6, 8)
Moreover, the Insurance Policy explains that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (Dkt. 41-1 at 19)
Additionally, the Insurance Policy contains several provisions describing who is insured under the policy. First, as noted above, the named insured on the Policy is designated as "Sports, Leisure & Entertainment Risk Purchasing Group and its enrolled member fitness or dance instructors whose names are on file with the company and for which an appropriate premium has been paid and to whom a certificate of insurance has been issued." (Dkt. 41 at ¶ 5; Dkt 41-1 at 3) The Parties agree that the certificate of insurance pertinent to this case was issued to "Josh Cooper DBA: Cooper Speed - Strength School." (Dkt. 41 at ¶ 8; Dkt. 26-3) The Insurance Policy defines "insured" as "any person or organization qualifying as such under Section II - Who is An Insured." (Id. ) (emphasis added)
The section entitled "WHO IS AN INSURED" was amended multiple times by endorsement. Not all of the amendments contain an effective date and therefore it is unclear which provisions were in effect at the time the Underlying Action was initiated. One endorsement entitled "POLICY CHANGES" ("Policy Changes Endorsement"), which has an effective date of January 1, 2016 states, in part:
Section II - Who is an Insured, is replaced with the following:
Section II - Who is an Insured
1. If you are designated in the declarations as:
a. An individual, you and your fitness/dance business entity is [sic] an insured, but only with respect to your conduct of business of which you are the owner.
(Dkt. 41-1 at 35) (emphasis added).
2. Underlying Complaint
On or about September 23, 2016, Nelson filed a lawsuit against the School, styled *1257 Mark Nelson, as parent and natural guardian of D.N., minor v. Cooper Speed-Strength School, Inc., in the Circuit Court in and for Hillsborough County, Florida, Case No. 16-CA-008970 ("Underlying Action"). (Dkt. 41 at ¶ 18) On or about November 9, 2016, Nelson filed an Amended Complaint and Demand for Jury Trial ("Underlying Complaint") in the Underlying Action adding Cooper, among others, as a defendant. (Id. )
In the Underlying Complaint, Nelson, no doubt aware of the policy coverage provisions, expressly alleges that before or during July 2016, Nelson's minor son, D.N. "began participating in individual or group instruction for fitness ." (Dkt. 41-2 at ¶¶ 5-6) (emphasis added) D.N.'s instructional sessions included agility drills which were conducted at the School, which according to Nelson, "held itself out to the public as a sports training center which provided athletes with the highest levels of athletic performance training." (Dkt. 41-2 at ¶¶ 3, 8) On or about July 24, 2016, D.N. participated in an agility drill involving "a game in which participants would try to throw a football into a 'goal' made from a tractor tire, while other participants or trainers would try to block or prevent the person with the football from reaching the goal." (Dkt. 41-2 at ¶ 10) "While D.N. was carrying a football and running toward the goal, a trainer ran ahead or parallel to him." (Dkt. 41-2 at ¶ 11) "The trainer failed to stop as both he and [D.N.] ran near the goal, and the trainer ran into the plate glass window at the end of the room." (Dkt. 41-2 at ¶ 12) The window shattered and "[a] jagged piece of glass caused severe cuts to [D.N.]'s right hand and arm, causing him to suffer serious injuries." (Dkt. 41-2 at ¶¶ 13-14)
Based on these factual allegations, the Underlying Complaint alleges one count of negligence against the School, one count of negligence against Cooper, one count of negligence against Devin Valencia, the trainer who ran with D.N. during the agility drill with D.N., and one count of negligence against WMI Sunstate Center, LLC, the property owner of the building in which the School operated.[2] (Dkt. 41-2)
In the negligence count against the School, Nelson alleges that the School "had a duty to supervise the agility drill and conduct it with care for the safety of participants, including [D.N.]." (Dkt. 41-2 at ¶ 17) According to Nelson, the School, through its officers and agents, committed negligent acts including but not limited to:
a) Allowing the agility drill to be conducted in a relatively small indoor space, rather than outdoors, in violation of its own internal policies;
b) Placing the goal close to the plate glass window, which posed a safety hazard to participants;
c) Failing to place a soft barrier in front of the plate glass window so people taking part in the agility drill would not run into the plate glass and shatter it;
d) Failing to replace the plate glass with a type of safety glass which would not shatter and spray shards on impact;
e) Failing to supervise [D.N.] and take reasonable steps to ensure that he would not be exposed to hazards as a result of taking part in agility drills in a relatively small indoor space;
f) Failing to enforce its own policies or safety procedures regarding where *1258 and when agility drills could be safely conducted;
g) Failing to create and implement reasonable safety standards and procedures to prevent harm from inappropriate use of indoor spaces;
h) Failing to warn minor children and their parents that activities involving running would be conducted in close proximity to hazards such as a plate glass window; and
i) Failing to provide protective gear or clothing to [D.N.] to prevent reasonably foreseeable injuries such as injuries from flying broken glass.
(Dkt. 41-2 at ¶ 18)
As to Cooper, the Underlying Complaint alleges that he had a duty to either "(1) conduct the agility drill in a reasonably safe manner or (2) supervise the agility drill to ensure that it was conducted by his subordinate employees or agents with reasonable care for the safety of participants, including [D.N.]." (Dkt. 41-2 at ¶ 36) The negligent acts asserted against Cooper are nearly identical to those against the School, the differences being (1) the allegations against Cooper substitute the pronoun "it" for "his" and (2) the following alterations to subsection (e) and (f):
e) Failing to supervise the Strength School employees and agents, along with [D.N.] , and failing to take reasonable steps to ensure that [D.N.] would not be exposed to hazards as a result of taking part in agility drills in a relatively small indoor space.
f) Failing to enforce his own policies or safety procedures, or Strength School's own policies or safety procedures, regarding where and when agility drills could be safely conducted.
(Dkt. 41-2 at ¶ 37) (emphasis added).
Nelson asserts that D.N. "suffered bodily injury, resulting pain and suffering, disability, disfigurement, scarring, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the ability to earn money." (Dkt. 41-2 at ¶¶ 33, 39, 45)
Despite these broad allegations, Nationwide seeks entry of summary judgment that it does not have a duty to defend Cooper or the School in the Underlying Action because the claims asserted and damages sought are expressly excluded by the Designated Operations Exclusion and the Designated Activities Limitation. (Dkt. 38)
II. STANDARD OF REVIEW
Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007) ). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).
Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356 ). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).
*1259 When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may grant summary judgment if the motion and supporting materials ... show that the movant is entitled to it." Fed. R. Civ. P. 56(e).
III. DISCUSSION
A. Governing Law
The Parties disagree on which state's law governs the interpretation of the Insurance Policy. Nationwide contends that Indiana law applies, while Nelson argues that Florida law applies.
A federal court sitting in diversity must apply the choice of law rules of the forum state. Pierce v. Prop. & Cas. Ins. Co. of Hartford, 303 F.Supp.3d 1302, 1303 (M.D. Fla. 2017) (citing Travelers Prop. Cas. Co. of Am. v. Kan. City Landsmen, L.L.C., 592 Fed. Appx. 876, 881 (11th Cir. 2015) ).[3] Thus, the Court must abide by Florida's choice of law rules. The Parties agree that " '[w]ith regard to insurance contracts, Florida follows the 'lex loci contractus' choice-of-law rule.' " Tudor Ins. Co. v. Am. Cas. Co. of Reading Pennsylvania, 274 F.Supp.3d 1278, 1282 (N.D. Fla. 2017) (quoting Rando v. Govt. Emps. Ins. Co., 556 F.3d 1173, 1176 (11th Cir. 2009) (quoting State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160, 1163 (Fla. 2006) ); (Dkt. 38 at 9; Dkt. 40 at 13). The rule of lex loci contractus " 'provides that the laws of the jurisdiction where the contract was executed governs interpretation of the substantive issues regarding the contract.' " Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc., 363 F.3d 1089, 1091 (11th Cir. 2004) (quoting Lumbermens Mut. Cas. Co. v. August, 530 So.2d 293, 295 (Fla. 1988) ). "The determination of where a contract was executed is fact-intensive and requires a determination of 'where the last act necessary to complete the contract [wa]s done.' " Id. (quoting Pastor v. Union Cent. Life Ins. Co., 184 F.Supp.2d 1301, 1305 (S.D.Fla. 2002).
Here, the plain language of the Application makes clear that the contract was not complete until the first premium was received by Nationwide, or Nationwide's insurance agent, K & K Insurance Group, Inc. The Application submitted by Cooper's agent on Cooper's behalf provides, "Coverage is contingent upon receipt of premium payment. No coverage will be deemed in effect until premium is received by the company or their representative." (Dkt. 26-2 at 2) It further states, "Acceptance of this quote confirms your desire to obtain liability insurance through the Sports, Leisure and Entertainment Risk Purchasing Group. K & K reserves the right to decline any request for coverage." (Id. ) This indicates that the Application constitutes merely a "request for coverage" or an offer, which could be rejected.
*1260 I.T.N. Consolidators, Inc. v. N. Marine Underwriters, Ltd., No. 09-20762-CIV, 2013 WL 12057501, at *6 (S.D. Fla. Mar. 18, 2013) (quoting Bullock v. Harwick, 158 Fla. 834, 30 So.2d 539, 541 (1947) ) (" '[A] mere offer not assented to constitutes no contract, for there must be not only a proposal but an acceptance, and, so long as the proposal was not acceded to, it is binding on neither party and may be retracted.' "). The Court acknowledges that absent a contractual provision to the contrary, "the payment of premiums is typically not the 'last act' necessary to complete an insurance contract." Pierce v. Prop. & Cas. Ins. Co. of Hartford, 303 F.Supp.3d 1302, 1306 (M.D. Fla. 2017). However, "when a contract clearly sets forth the last act necessary to execute the contract, the language of the contract controls." W. Coast Ins. Co. v. Life Brokerage Partners, LLC., No. 08-80897-CIV, 2010 WL 11505857, at *3 (S.D. Fla. July 28, 2010), report and recommendation adopted as modified sub nom. W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC, No. 08-80897, 2010 WL 11505114 (S.D. Fla. Sept. 29, 2010). By the express terms of the Application, the completion of the contract is not effectuated until and unless there is "receipt of premium payment." Thus, the Court finds that the last act necessary to complete the instant Insurance Policy was the receipt of the premium payment from either the insured to the insurer or insurer's agent.
The Parties, however, do not provide the Court with the location where the premium payment was received. Nelson provides only the location from which the payment was sent (Florida) and contends that Florida law should therefore apply. Nationwide details only the location where the Policy was "issued for delivery" (Indiana), and claims that Indiana law should apply. Thus, it is unclear which state's law should apply in this case. However, the Parties acknowledge that the laws in both states on the interpretation of an insurance policy are similar. See Dkt. 38 at 9 n.2 (stating that the rules for interpreting an insurance policy under Indiana law "are substantively the same under Florida law"); Dkt. 40 at 4 (affirming that "even if Indiana law does apply to this issue, it is similar to - and at least as favorable to an insured - as is Florida law")
The Court finds that the laws of the two states are sufficiently similar that analysis under either would yield the same result. It appears that the only significant difference is whether the Court may look beyond the pleadings in the action and the terms of the contract (the so called "eight corners") to determine an insurer's duty to defend. Under Florida law, "an insurer's duty to defend is determined solely by the allegations in the underlying complaint." Zurich Am. Ins. Co. v. S.-Owners Ins. Co., 314 F.Supp.3d 1284, 1291 (M.D. Fla. 2018) (citing Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co., 76 So.3d 20, 23 (Fla. 1st DCA 2011) ; Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995) ). "The actual facts of the situation are not relevant, such that 'the insurer must defend even if facts alleged are actually untrue or legal theories unsound.' " Zurich, 314 F.Supp.3d at 1299 (quoting Lawyers Title Ins. Corp., 52 F.3d at 1580 ).
In contrast, under Indiana law, " 'an insurer's duty to defend is determined by the allegations of the complaint coupled with those facts known to or ascertainable by the insurer after a reasonable investigation.' " Selective Ins. Co. of Am. v. Smiley Body Shop, Inc., 260 F.Supp.3d 1023, 1033 (S.D. Ind. 2017) (quoting Newnam Mfg., Inc. v. Transcontinental Ins. Co., 871 N.E.2d 396, 405 (Ind. Ct. App. 2007) ). Thus, "[a]n insurer may properly choose not to defend if its independent *1261 investigation of the facts underlying a complaint against its insured 'reveals a claim patently outside of the risks covered by the policy.' " Atl. Cas. Ins. Co. v. Garcia, 227 F.Supp.3d 990, 993 (N.D. Ind.), aff'd, 878 F.3d 566 (7th Cir. 2017) (quoting Liberty Mut. Ins. Co. v. Metzler, 586 N.E.2d 897, 901 (Ind. Ct. App. 1992) ).
Here, neither Party relies on any facts adduced in an investigation of the Underlying Action other than those alleged in the Underlying Complaint in their arguments for and against coverage. Both Parties rely solely on the allegations of the Complaint with respect to the duty to defend issue. Thus, the Court finds that to the extent that Indiana law and Florida law differ on the interpretation of an insured's duty to defend or indemnify, the differences are immaterial in this case.[4]
B. Legal Standard for Duty to Defend and Duty to Indemnify
Under both Indiana and Florida law, " 'an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy.' " Hassoun v. Reliastar Life Ins. Co., 288 F.Supp.3d 1334, 1352 (S.D. Fla. 2018) (quoting Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co., No. 3:05-cv-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing Graber v. Clarendon Nat'l Ins. Co., 819 So.2d 840, 842 (Fla. 4th DCA 2002) ) ); Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris, 99 N.E.3d 625, 630 (Ind. 2018) ("Insurance policies are contracts subject to the same rules of judicial construction as other contracts."). " '[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.' " Philadelphia Indem. Ins. Co. v. Fla. Mem'l Univ., 307 F.Supp.3d 1343, 1347 (S.D. Fla. 2018) (quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla. 2005) ; Erie, 99 N.E.3d at 630 (citations omitted) ("When confronted with a dispute over the meaning of insurance policy terms, Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning."). "It is only 'when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction,' that such an ambiguity will be construed in favor of coverage. Id. (quoting Taurus, 913 So.2d at 532 ); Erie, 99 N.E.3d at 630 (citations omitted) (stating that "courts may construe-or ascribe meaning to-ambiguous policy terms only."). "The mere fact that an insurance provision is 'complex' or 'requires analysis' does not make it ambiguous." S.-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC, 872 F.3d 1161, 1164 (11th Cir. 2017) (quoting *1262 Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003) ). Instead, "[a] policy provision 'is considered ambiguous if the relevant policy language is susceptible to more than one reasonable interpretation.' " Ayers v. State Farm Mut. Auto. Ins. Co., 316 F.Supp.3d 1324, 1328 (M.D. Fla. 2018) (quoting James River Ins. Co. v. Ground Down Eng'g, 540 F.3d 1270, 1274 (11th Cir. 2008) ); Erie, 99 N.E.3d at 630 (citations omitted) ("[I]nsurance policy provisions are ambiguous only if they are 'susceptible to more than one reasonable interpretation.' ").
Under Indiana and Florida law, "where an injured party 'alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit.' " Zurich, 314 F.Supp.3d at 1299 (quoting Category 5 Mgmt. Grp., LLC, 76 So.3d at 23 ); Prop.-Owners Ins. Co. v. Virk Boyz Liquor Stores, LLC, 219 F.Supp.3d 868, 873 (N.D. Ind. 2016) (citing Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc., 43 F.3d 1119, 1122 (7th Cir. 1994) (stating that "an insurer must defend an action even if only a small portion of the conduct alleged in the complaint falls within the scope of the insurance policy."). "If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." Lawyers Title Ins. Corp., 52 F.3d at 1580-81.
An insurer's duty to indemnify, on the other hand, "must be determined by analyzing the policy coverage in light of the actual facts in the underlying case." Zurich, 314 F.Supp.3d at 1299 (quoting J.B.D. Constr., Inc. v. Mid-Continent Cas. Co., 571 Fed.Appx. 918, 927 (11th Cir. 2014) ). "[A]n insurer is only obligated to indemnify its insured for the portion of a judgment or settlement attributable to a covered claim." Zurich, 314 F.Supp.3d at 1299 (citing Highland Holdings, Inc. v. Mid-Continent Cas. Co., No. 8:14-cv-1334-T-23TBM, 2016 WL 3447523, at *2 (M.D. Fla. June 23, 2016) ). Thus, " 'the duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims.' " Diamond State Ins. Co. v. Boys' Home Ass'n, Inc., 172 F.Supp.3d 1326, 1342 (M.D. Fla. 2016) (quoting J.B.D. Constr., Inc., 571 Fed. Appx. at 927 ); see also Fid. Nat. Prop. & Cas. Co. v. Boardwalk Condo. Ass'n, Inc., No. 3:07CV278/MCREMT, 2010 WL 1911159, at *7 (N.D. Fla. May 12, 2010) ("[T]he duty to indemnify is not ripe for adjudication in a declaratory judgment action until there is a factual determination that the [insured] is liable in the underlying suit."); Pekin Ins. Co. v. Main St. Cons't., Inc., No. 106-CV-0961-TAB-DFH, 2007 WL 1597924, at *4 (S.D. Ind. June 1, 2007) (quotations omitted) (stating that "where there is a duty to defend, the duty to indemnify must await resolution of the underlying suits.' ").
C. Duty to Defend Cooper in the Underlying Action
As to its duty to defend Cooper, Defendant argues that the claims made and damages sought in the Underlying Action are expressly excluded by the Designated Operations Exclusion and the Designated Activities Limitation in the Insurance Policy. The Designated Operations Exclusion excludes coverage for "[o]wnership, operation or management of a fitness, dance or sports facility" and "[i]nstruction of sports skills activities." (Dkt. 41-1 at 6) The Designated Activities Limitation endorsement provides that the Insurance Policy only applies to "[i]ndividual or group instruction of fitness, dance or exercise directly conducted by you , as reported to the company." (Dkt 41-1 at 8) (emphasis added). According to Nationwide, because the Underlying Complaint alleges that the *1263 School holds itself out to be a sports training center, and that D.N. "was injured while participating in a training session conducted by an unidentified trainer - not by the Named Insured, Cooper," coverage for the Underlying Action is excluded under both the Designated Operations Exclusion and the Designated Activities Limitation endorsements.
Regarding the Designated Activities Limitation, Nationwide contends that the Underlying Action is not covered because the instruction underlying the negligence claim was conducted by a skills trainer, not Cooper. However, contrary to Nationwide's assertions, the Underlying Complaint, does allege that Cooper, himself, was negligent in the instruction of the agility drill. Indeed, Nelson alleges that Cooper had a duty to either "(1) conduct the agility drill in a reasonably safe manner or (2) supervise the agility drill to ensure that it was conducted by his subordinate employees or agents with reasonable care for the safety of participants, including [D.N.]." (Dkt. 41-2 at ¶ 36) Further, Nelson alleges that Cooper breached his duty by, inter alia:
a) Allowing the agility drill to be conducted in a relatively small indoor space, rather than outdoors, in violation of his own internal policies;
b) Placing the goal close to the plate glass window, which posed a safety hazard to participants;
c) Failing to place a soft barrier in front of the plate glass window so people taking part in the agility drill would not run into the plate glass and shatter it;
d) Failing to supervise the Strength School employees and agents, along with [D.N.], and failing to take reasonable steps to ensure that [D.N.] would not be exposed to hazards as a result of taking part in agility drills in a relatively small indoor space;
e) Failing to enforce his own policies or safety procedures, or Strength School's own policies or safety procedures, regarding where and when agility drills could be safely conducted;
f) Failing to provide protective gear or clothing to [D.N.] to prevent reasonably foreseeable injuries such as injuries from flying broken glass.
(Dkt. 41-2 at ¶ 37) ) As demonstrated, the allegations against Cooper do not merely involve Cooper's supervisory capacity, but instead allege direct oversight in connection with the agility drill. The Underlying Complaint alleges that Cooper "plac[ed] the goal to close to plate glass window," "fail[ed] to place a soft barrier in front of the plate glass window," and "failed to provide safety gear or clothing to [D.N.]" in preparation for the agility drill. (Dkt. 41-2 at ¶ 37) These allegations assert that Cooper took an active role in the instruction of the alleged fitness exercise, particularly in the devising and preparation of the drill, which can rationally be seen as part of the instruction of the drill. Therefore, these allegations fit within the limitation of the Designation Activities Limitation endorsement because, as alleged in the complaint, the activity was "individual and group instruction of fitness, dance, or exercise conducted" at least in part, directly by Cooper. See e.g. Dkt. 41-2 at ¶¶ 5-6, (... D.N. "began participating in individual or group instruction for fitness.") As noted earlier, "where an injured party 'alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit.' " Zurich, 314 F.Supp.3d at 1299 (quoting Category 5 Mgmt. Grp., LLC, 76 So.3d at 23 ); Prop.-Owners Ins., 219 F.Supp.3d at 873 (stating that "an insurer must defend an *1264 action even if only a small portion of the conduct alleged in the complaint falls within the scope of the insurance policy."). Thus, the Designation Activities Limitation does not remove Nationwide's duty to defend Cooper in the Underlying Action.
Nationwide also contends that the Designated Operations Exclusion excuses its duty to defend Cooper in the Underlying Action because it excludes coverage for "[o]wnership, operation or management of a fitness, dance or sports facility" and "[i]nstruction of sports skills activities." (Dkt. 41-1 at 6) With respect to the "[o]wnership, operation or management of a fitness, dance or sports facility" portion of the exclusion, the Court finds that the exclusion does not apply because the Underlying Complaint contains allegations against Cooper that assert negligence in the instruction of the particular activity in which D.N. was involved. Nelson alleges that Cooper failed to properly conduct the exercise in a safe manner and his failure resulted in D.N.'s injury. As explained above, these allegations are not merely assertions that Cooper was negligent in the general ownership, operation, management of the facility. Thus, the Designated Operations Exclusion will not preclude the duty to defend on this basis.
Moreover, the Court finds that the Designated Operations Exclusion does not preclude the duty to defend Cooper in the Underlying Action based on its exclusion of the instruction "sports skills activities." The Insurance Policy provides no definition of "sports skills activities" and does not attempt to distinguish instruction of "sports skills activities," which is excluded under the policy, from instruction of "fitness" or "exercise," which is covered under the policy.
"If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." Timber Pines Plaza, LLC v. Kinsale Ins. Co., 250 F.Supp.3d 1311, 1316 (M.D. Fla. 2017) (quoting Kendall v. Genworth Life Ins. Co., 193 F.Supp.3d 1290, 1292 (M.D. Fla. 2016) ); Bachman v. AMCO Ins. Co., 897 F.Supp.2d 780, 786 (N.D. Ind. 2012) (citing Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind.2009) (stating that in determining whether there is exists ambiguity in policy language, Indiana courts interpret the language " 'from the perspective of an ordinary policyholder of average intelligence.' "). The Court notes that the lack of a definition for terms in a policy does not, by itself, create ambiguity. Grover Commercial Enterprises, Inc. v. Aspen Ins. UK, Ltd., 202 So.3d 877, 880 (Fla. 3d DCA 2016) (citations omitted) (stating that a policy term is not ambiguous merely because "the relevant language is not defined in the policy"); Erie Indem. Co., 99 N.E.3d at 630 (quoting Wagner v. Yates, 912 N.E.2d 805, 810 (Ind. 2009) ) ("[F]ailure to define a term in an insurance policy does not necessarily make it ambiguous" and thus subject to judicial construction."). " 'A term is ambiguous only if, applying the ordinary meaning, one would conclude the provision containing the term is reasonably susceptible to two or more constructions.' " Timber Pines Plaza, LLC v. Kinsale Ins. Co., 250 F.Supp.3d 1311, 1316 (M.D. Fla. 2017) (quoting Kendall v. Genworth Life Ins. Co., 193 F.Supp.3d 1290, 1292 (M.D. Fla. 2016) ); Erie Indem. Co., 99 N.E.3d at 630 (citing Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co., 983 N.E.2d 574, 577 (Ind. 2013) ("[I]nsurance policy provisions are ambiguous only if they are 'susceptible to more than one reasonable interpretation.' "). Moreover, "[w]hen an insurer fails to define a term in a policy, ... the insurer cannot take the position that there should be a 'narrow, restrictive interpretation *1265 of the coverage provided.' " Abreu v. Lloyd's, London, 877 So.2d 834, 836 (Fla. 3d DCA 2004) (citations and quotation marks omitted).
Moreover, under Florida law, "policy provisions excluding or limiting the insurer's liability are construed more strictly than coverage provisions." Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So.2d 26, 30 (Fla. 2d DCA 2004) (citing Purrelli v. State Farm Fire & Cas. Co., 698 So.2d 618, 620 (Fla. 2d DCA 1997) ). Similarly, the Indiana Supreme Court has noted that "where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured. This is especially true where the language in question purports to exclude coverage." State Auto. Mut. Ins. Co. v. Flexdar, Inc., 964 N.E.2d 845, 848 (Ind. 2012) (quotations and citations omitted). Such limiting provisions must be construed in favor of the insured if they are ambiguous or reasonably susceptible to more than one meaning. Gen. Star Indem. Co., 874 So.2d at 30 (citing Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998) ).
Here, the undefined term of relevance is "sports skills activities." The Court finds that "sports skills activities" is ambiguous in the Insurance Policy because it is susceptible to at least two reasonable constructions. If not ambiguous standing alone, it is certainly ambiguous in a policy that purports to include fitness activities as covered activities and to exclude sports skill activities from coverage, without defining either. The term can be read to include only those activities that involve the practice of a particular sport. For instance, practicing jump shots for basketball or practicing swings in baseball. However, "sports skills activities" is susceptible to a broader construction. It could encompass any "exercise" or "fitness" activity that has a residual effect on a person's ability in a sport. For example, lifting weights for strength in wrestling or running sprints for speed in football, or, as in the case in point, practicing agility skills that can have cross-over application in any sport and in fitness in general. Because the term "sports skills activities" is ambiguous in the Insurance Policy it must be construed in favor of the insured
As explained, the more narrow construction of "sports skills activities" would include only those activities that involve the practice of a particular sport. Because this interpretation would limit the exclusion to a narrower set of activities and hence, provide more coverage to the insured, the Court adopts this construction. This ambiguity is highlighted by the allegations in the Underlying Complaint.
The Underlying Complaint alleges that D.N. "aspired to develop speed and strength to improve his skills as a baseball player." (Dkt. 41-2 at ¶ 5) (emphasis added) "As part of that effort, [D.N.] began participating in individual and group instruction for fitness ." (Dkt. 41-2 at ¶ 6) Of course, baseball training could be considered distinct from general fitness training for speed and strength that has a residual effect on a person's athleticism in baseball. The Underlying Complaint does not allege that D.N. sought baseball training from the School. Moreover, the Underlying Complaint alleges that the injury D.N. sustained occurred during "agility drills," which can be best interpreted as a drill designed to improve the participant's agility, not the practice of any particular sport. Notably, using a football for improving baseball agility would suggest even more strongly that the activity had more to do with fitness and not a particular sport skill. Thus, the Court finds that the conduct alleged in the Underlying Complaint is not *1266 narrowly "sports training activity" as Nationwide contends. Moreover, it is at least uncertain whether an "agility drill" with crossover benefit is a "sports training activity," and not "individual ... instruction of fitness" as contemplated by the policy, and that uncertainty must be resolved in favor of the insured. See Philadelphia Indem. Ins. Co., 307 F.Supp.3d at 1347 (S.D. Fla. 2018) (stating that insurance provisions must be construed in favor of the insured "when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction"). In fact, Nationwide itself characterizes the Underlying Complaint as alleging "fitness and exercise instruction." (Dkt. 42 at 3) ("It is undisputed that the claims made and damages alleged by Nelson in the Underlying Lawsuit resulted from fitness or exercise instruction ....") Hence, the Court finds that the Designated Operations Exclusion does not bar Nationwide's duty to defend Cooper in the Underlying Action.
D. Duty to Defend The School in the Underlying Action
The Parties additionally dispute whether the Insurance Policy covers the School.[5] Nationwide contends that the Policy covers only Cooper because the Certificate of Insurance was issued to "Josh Cooper DBA: Cooper Speed - Strength School." (Dkt. 41 at ¶¶ 5,8; Dkt. 26-3; Dkt 41-1 at 3) Nationwide asserts that the "d/b/a" or "doing business as" designation of the School merely constitutes a fictitious name and not a separate legal entity. (Dkt. 42 at 4) Thus, according to Nationwide, the School is not an additional Named Insured. Nelson contends that the "d/b/a" designation is not without legal significance and that the description of the Named Insured should be construed to include the School as a named insured.
However, as Nelson points out, even if the Court were to accept that the School is not a named insured, the Policy Changes Endorsement in the Insurance Policy would nonetheless include the School as an insured. The Policy Changes Endorsement has an effective date of January 1, 2016 and provides in part:
Section II - Who is an Insured, is replaced with the following:
Section II - Who is an Insured
1. If you are designated in the declarations as:
a. An individual, you and your fitness/dance business entity is [sic] an insured, but only with respect to your conduct of business of which you are the owner.
(Dkt. 41-1 at 35)
Nationwide provides no argument as to why this endorsement would not render the School, which is Cooper's fitness business entity, an insured under the Insurance Policy. Courts have construed policies containing similar language to cover the additional insured for both the acts of the named insured and for the additional insured's own actions. See Amerisure Ins. Co. v. Orange & Blue Const., Inc., 913 F.Supp.2d 1363, 1370 (S.D. Fla. 2012) ("It has been held that where, as here, a policy uses the phrase 'liability arising out of the operations' of a named insured, it is not necessary for the named insured's acts to have 'caused' the accident. It is sufficient if the injured person was present at the scene of the accident in connection with performing the named insured's business, *1267 even if the cause of the injury was the negligence of the additional insured."). In such cases, "courts applying Florida law have found insurance policies providing coverage to an additional insured for liability or damages 'arising out of' the work of the primary (or named) insured to be potentially ambiguous with respect to whether the additional insured must be covered for its own negligence or only its vicarious liability for the negligence of the named insured." Zurich, 314 F.Supp.3d at 1303 (citing Monticello Ins. Co. v. City of Miami Beach, No. 06-20459-CIV, 2009 WL 667454, at **8-9 (S.D. Fla. Mar. 11, 2009) ; Koala Miami Realty Holding Co. v. Valiant Ins. Co., 913 So.2d 25, 27 (Fla. 3d DCA 2005) ). In those cases, the courts "determined that in the absence of clear policy language limiting coverage to vicarious liability, the additional insured was entitled to coverage for its own negligence." Id. (citing Monticello, 2009 WL 667454, at **8-11 ; Koala Miami Realty Holding Co., 913 So.2d at 27 ). Indiana courts have suggested a similar construction of additional insured provisions. See e.g., Travelers Cas. & Sur. Co. v. Elkins Constructors, Inc., No. IP 97-1807-C-T/G, 2000 WL 724006, at *2 (S.D. Ind. May 18, 2000) (noting that courts interpreting additional insured clauses containing similar language construe them "broadly, encompassing coverage to extend to liability beyond merely the additional insured's vicarious liability for the actions of the named insured."); Selective Ins. Co. of S.C. v. Erie Ins. Exch., 14 N.E.3d 105, 108 (Ind. Ct. App. 2014) (noting that in the landlord-tenant context, a provision listing a lessor as an additional insured provides coverage to that lessor so long as the underlying complaint bears more than a "isolated connection" to the premises leased to the named insured lessee). Here, because Nationwide makes no argument that this endorsement does not pertain to the School, it has failed to demonstrate that it has no duty to defend the School under this provision of the policy.
Nationwide argues that irrespective of whether the School is an insured under the policy, coverage for the School in the Underlying Action is nonetheless excluded because the Designated Activities Limitation restricts coverage to "individual and group instruction of fitness, dance, or exercise directly conducted by you ." (Dkt 42 at 2-3) (emphasis added) It follows, according to Nationwide, that because "you" and "your" are defined under the Insurance Policy as the "Named Insured," coverage is limited only to direct conduct of the Named Insured, in this case, Cooper. The Court finds this argument unpersuasive. The Court acknowledges that the Insurance Policy provides that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations," but it also expressly states that "you" and "your" includes "any other person or organization qualifying as a Named Insured under this policy." (Dkt. 41-1 at 19) Notably, the Insurance Policy then defines "insured" as "any person or organization qualifying as such under Section II - Who is An Insured." (Id. ) Thus, "you" and "your" can reasonably be interpreted to refer to a Named "Insured," or more specifically, a named "person or organization qualifying as [an insured] under Section II - Who is An Insured." Because the School, pursuant to the Policy Changes Endorsement, is such an entity, "you" and "your" can also reasonably be read to include the School.
"An insurance company, as drafter of the policy, has the obligation of spelling out in clear, unambiguous language exactly who is covered by the policy and who is to be excluded. Any ambiguity in the language of the policy will be construed against the company."
*1268 Fireman's Fund Ins. Co. v. Vordermeier, 415 So.2d 1347, 1350 (Fla. 4th DCA 1982). Here, even if it is not clear that the School is a named insured, by virtue of the Policy Changes Endorsement, it is at least ambiguous whether "you" and "your" refer only to Cooper or to Cooper and the School. "Insured" is a word within the phrase "Named Insured," and the Insurance Policy defines the word "insured" to include the School. The Court will not allow Nationwide to split hairs on these two significant terms where it has failed to expressly delineate any distinction between the two. Thus, if there is any ambiguity, the Court resolves this ambiguity in favor of the insured and finds that the both Cooper and the School are insureds under the Insurance Policy, and that to the extent the words "you" and "your" are used throughout the Policy, it refers to both Cooper and the School.
Thus, the Designated Activities Limitation limits coverage under the Insurance Policy to "individual and group instruction of fitness, dance, or exercise directly conducted by" Cooper or the School. The School, as a corporation, acts through its employees and agents, including Cooper, who is alleged to have designed the fitness training exercise, and Devin Valencia, the trainer who ran with D.N. during the agility drill. See Discover Prop. & Cas. Ins. Co. v. Lexington Ins. Co., 664 F.Supp.2d 1296, 1300 (S.D. Fla. 2009) ("The act of an employee or agent of a corporation is the act of the corporation itself, since an inanimate organization such as a corporation must act only through individual persons."); Trail v. Boys & Girls Clubs of Nw. Indiana, 845 N.E.2d 130, 138 (Ind. 2006) ("In the case of a corporation, the legal entity acts through its directors and officers."). Thus, to the extent that the Underlying Complaint alleges instruction of fitness conducted by Valencia or Cooper, such acts are properly deemed acts conducted directly by "you" and are not excluded by the Designated Activities Limitation.
E. Duty to Indemnify in the Underlying Action
As noted earlier, an insurer's duty to indemnify "must be determined by analyzing the policy coverage in light of the actual facts in the underlying case." Zurich, 314 F.Supp.3d at 1299 (quoting J.B.D. Constr., Inc., 571 Fed. Appx. at 927 ). Indeed, "the duty to indemnify is not ripe for adjudication in a declaratory judgment action until there is a factual determination that the [insured] is liable in the underlying suit." Boardwalk Condo. Assoc., Inc., 2010 WL 1911159, at *7 ; Indiana Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc., 917 N.E.2d 1258, 1276 (Ind. Ct. App. 2009) (finding indemnification order premature where underlying litigation had not yet concluded). Here, the Parties have not indicated that there has been any finding of liability in the Underlying Action. It is certainly possible that a determination in the Underlying Action could more narrowly delineate duties and responsibilities of the participants in this training exercise and these determinations might implicate indemnity duties of the insurer and coverage rights of the insureds. Thus, the Court finds that Nationwide's duty to indemnify the School or Cooper is not ripe for adjudication.
IV. CONCLUSION
Upon consideration of the foregoing, it is hereby ORDERED as follows:
1. Plaintiff's Motion for Final Summary Judgment, (Dkt. 38), is DENIED as to its request for a declaration in its favor that it owes no duty to defend.
2. Plaintiffs Motion for Final Summary Judgment, (Dkt. 38), is DENIED AS
*1269 PREMATURE as to its request for a declaration in its favor regarding its duty to indemnify.
DONE and ORDERED in Tampa, Florida, this 27th day of September, 2018.

A full explication of the applicable law and choice of law is discussed infra at Section II.A.

The Court declines to address the allegations made against WMI Sunstate Center, LLC or Valencia as neither is a party to this action. (See Order of Dismissal with Prejudice as Against WMI Sunstate Center, LLC only, Dkt. 46)

The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

The Court rejects Nelson's argument that under Florida law, Nationwide cannot rely on any of the policy exclusions to deny coverage in this case because it failed to deliver the policy to Cooper as required by Florida Statute § 627.421. (Dkt. 40 at 16-20) The Court notes that neither Party has identified a similar counterpart provision in Indiana law. As Nationwide notes, Florida courts have declined to estop insurers from relying on exclusions within an insurance policy despite their failure to deliver the policy to the insured where the exclusion is provided on the face of the insurance application or summary received by the insured. See e.g., T.H.E. Ins. Co. v. Dollar Rent-A-Car Sys., Inc., 900 So.2d 694, 696 (Fla. 5th DCA 2005) (declining to invalidate an exclusion in an insurance policy where the exclusion was conspicuous on the car rental agreement the insured signed). Here, both the exclusion and limitation upon which Nationwide relies are provided in the Application submitted by Cooper's agent under a section entitled "Notable Exclusions." (Dkt. 26-2 at 2) Therefore, the Court finds that Nationwide is not estopped from asserting its arguments for denial of coverage based on the subject exclusion and limitation.

First, the Court would note than any defense of Cooper would necessarily appertain to the School, such that the issue is largely a moot point once a duty to defend arises as to Cooper. Technically, the School would be required to secure counsel if Nationwide declined to represent them both, so the Court undertakes this analysis.